In re the Paternity of Chad M. G.:

Chad M. G. and Frederic P. Felker, Guardian ad Litem
for Chad M. G., Petitioners-Respondents,

v.

Kenneth J. Z., Respondent-Appellant.†

Court of Appeals

*No. 94-3119. Submitted on briefs April 24, 1995.—Decided
May 16, 1995.*

(Also reported in 535 N.W.2d 97.)

†Petition to review denied.

689

For the respondents-appellants the cause was submitted on the briefs of *Michael J. Milliken* and *George L. Glonek* of *Marcovich, Cochrane & Milliken* of Superior.

For the petitioner-respondent the cause was submitted on the brief of *Frederic P. Felker* of Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Kenneth J. Z. appeals a paternity judgment based on a paternity action brought by Frederic Felker, guardian ad litem for Chad M. G., adjudicating Kenneth the father of Chad. Several years prior to Chad's paternity action, the Douglas County corporation counsel filed a paternity action on behalf of Chad's mother, Janet L. G., that was ultimately dismissed with prejudice. Kenneth contends that Chad was in privity with Janet at the time the paternity action was dismissed and therefore argues that the trial court erred by failing to conclude that res judicata barred Chad's subsequent paternity action. Further, Kenneth argues that the trial court erred by failing to dismiss Chad's action because the Douglas County corporation counsel improperly acted as Chad's guardian ad litem

while it continued to prosecute the paternity action on behalf of the State. Because we conclude that Chad was not in privity with his mother at the time the original paternity action was dismissed and that the Douglas County corporation counsel properly acted as Chad's guardian ad litem, we affirm the trial court's judgment.

This case, the facts of which are undisputed, involves a series of paternity actions filed against Kenneth over a period of approximately fourteen years. The first action, which was filed in 1981 by the Douglas County corporation counsel on behalf of Chad's mother, alleged that Kenneth was Chad's father. A preliminary examination was held; however, the case never went to trial. Over the course of the next four years, no further action was taken on the matter. As a result, the trial court dismissed the action with prejudice for failure to diligently prosecute.

Approximately one year later, the Douglas County corporation counsel filed a second paternity action on behalf of Chad's mother. This action, like its predecessor, alleged Kenneth to be Chad's father. Citing the dismissal of the previous action, Kenneth moved to dismiss the second action on the grounds that it was barred under the doctrine of res judicata. The trial court denied Kenneth's motion and ultimately entered a judgment adjudicating Kenneth to be Chad's father. On appeal, this court reversed the trial court's judgment, concluding that the doctrine of res judicata barred prosecution of the mother's second paternity claim.

In 1992, a third paternity action was filed on Janet's behalf against Kenneth. This action, which again alleged Kenneth to be Chad's father, was later voluntarily dismissed in favor of a fourth action filed on Chad's behalf. Kenneth moved to have the fourth

action dismissed, arguing that the claim was barred by res judicata. Additionally, Kenneth argued that the action should be dismissed because Chad's guardian ad litem, Frederic Felker, was improperly acting both as corporation counsel for the State and as Chad's guardian ad litem. The trial court, however, denied Kenneth's motion and, in a decision rendered approximately two years later, adjudicated Kenneth to be Chad's father. It is from this judgment that Kenneth appeals.

Kenneth first contends that Chad was in privity with his mother when her original paternity action was dismissed and that Chad's paternity action is therefore barred by the doctrine of res judicata. Whether a claim is barred by res judicata is a question of law that we review without deference to the trial court. *Landess v. Schmidt*, 115 Wis. 2d 186, 191, 340 N.W.2d 213, 216 (Ct. App. 1983). "Under the doctrine of res judicata, a final judgment on the merits in a prior action is conclusive and bars all subsequent actions between the same parties [and] their privies as to all matters that were or that might have been litigated in the prior action." *Stuart v. Stuart*, 140 Wis. 2d 455, 460, 410 N.W.2d 632, 635 (Ct. App. 1987).

Kenneth argues that strict identity of the parties is not necessary to achieve privity. Relying on *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986), Kenneth contends that a party may be in privity with a named party when the named party represents the same legal interest. Applying this principle to the case at bar, Kenneth argues that because Chad's interest was identical to his mother's, Chad was in privity with his mother at the time her action was dismissed and res judicata therefore bars his claim.

Whether a child's paternity action may be barred by a previous action filed on behalf of his mother is an issue of first impression in Wisconsin. In addressing this issue, we shall accept Kenneth's assertion that an identity of interests is sufficient to place parties in privity for the purpose of res judicata. Further, we acknowledge that in many cases the mother's interests in a paternity proceeding coincide with the interest of both the child and the State. *In re R.W.L.*, 116 Wis. 2d 150, 155-56, 341 N.W.2d 682, 684 (1984). Nonetheless, we conclude that the respective interests of a mother and child are not sufficiently identical to place them in privity.

There are many instances when a child's interests will be significantly different from that of the mother. The child will often have a compelling interest in establishing the paternity of the putative father. This interest may stem from the child's need to establish his or her right to support or inheritance, the child's desire to establish the father's right to seek custody or the child's interest in establishing a meaningful relationship with the father. *In re D.S.L.*, 159 Wis. 2d 747, 752, 465 N.W.2d 242, 244 (Ct. App. 1990). Despite the child's interest, however, the mother may refrain from pursuing a paternity action. As our supreme court noted in *R.W.L.*:

> A mother may have a variety of reasons for not initiating paternity proceedings: she may have a continuing relation with or affection for the father; she may wish to avoid continuing any relation with the father, including child support; she may wish to avoid the disapproval of her family or the community that she believes a paternity action would

695

produce; she may be subject to the emotional strain and confusion that often attend the birth of a child born out of wedlock and continue for a prolonged period, hindering any effort by her to seek child support; she may be able to support the child and not foresee a change in her circumstances.

*Id.* at 160-61, 341 N.W.2d at 686. Thus, it is apparent that while a mother and child will often have a shared interest in pursuing a paternity action against the putative father, there is a significant likelihood that their interests will conflict. Similarly, the child's interests in a paternity action will often conflict with the State's interests. *See D.S.L.,* 159 Wis. 2d at 752, 465 N.W.2d at 244 (the State's primary interest is to protect the public from the burden of supporting children born out of wedlock where the fathers are financially able to contribute to their support). Accordingly, we conclude that a mother and child's respective interests are not sufficiently identical to place them in privity for the purpose of res judicata. Therefore, we conclude that the trial court properly determined that Chad's action was not barred by res judicata. We also observe that our conclusion is consistent with other jurisdictions that have addressed this issue. *See Arsenault v. Carrier,* 390 A.2d 1048, 1051 (Me. 1978); *Johnson v. Hunter,* 447 N.W.2d 871, 874 (Minn. 1989).

██

Because we conclude that there is no privity between the mother and child in a paternity action, there is a danger that a father will be subject to two separate paternity proceedings. A father once acquitted of a paternity charge brought by the mother may be required to face a second paternity claim instituted by a child. The obvious unfairness of being subject to the cost and inconvenience of two separate trials and the

drain that such a result would have on judicial resources could create a potentially serious problem. The solution to this problem, however, does not compel us to conclude that there is an identity of interests between the mother and child. Rather, we recommend that when a paternity action is initiated by a party, trial courts take affirmative steps to ensure that those persons whose similar interests remain unlitigated are added as additional parties. In this way, the first judgment will have preclusory effects on all individual parties to the action, and the courts and defendants will not be confronted with a series of sequential claims identical to previously resolved judicial matters. Taking steps to join the unnamed parties who have an interest in the determination should be neither difficult nor time consuming, and the benefits of fairness and judicial economy well support whatever additional expense may be required to litigate the rights of all parties in the initial action.

Kenneth next alleges that the trial court erred by failing to dismiss the paternity action because Chad's guardian ad litem was also acting as corporation counsel for Douglas County. Kenneth asserts that under § 767.075(2)(a), STATS., an attorney employed by the State as corporation counsel may only represent the State in matters affecting the family. Further, Kenneth argues that the divergent interests the State and the child have in a paternity action create a conflict of interest, precluding the corporation counsel from acting on behalf of the child.

■■■■

Whether § 767.075(2)(a), STATS., precludes an attorney employed as corporation counsel from acting as a child's guardian ad litem in a paternity proceeding involves a question of statutory interpretation that we

review without deference to the trial court. *Pulsfus Poultry Farms v. Leeds*, 149 Wis. 2d 797, 803-04, 440 N.W.2d 329, 332 (1989). When interpreting a statute, our primary objective is to give effect to the legislature's intent. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537-38, 345 N.W.2d 389, 394 (1984). If the statute is unambiguous, we must discern the legislature's intent solely from the language of the statute. *Pulsfus*, 149 Wis. 2d at 804, 440 N.W.2d at 332.

Section 767.075(2)(a), STATS., provides in relevant part: "Except as provided in par. (b), in any action affecting the family under a child support enforcement program, an attorney acting under s. 46.25 or 59.07(97), including any district attorney or corporation counsel, represents only the state." Subsection (b), however, goes on to provide:

> Paragraph (a) does not apply to an attorney who is employed by the department of health and social services under s. 46.25 or a county under s. 59.07(97) or 59.458(1) to act as the guardian ad litem of the minor child for the purpose of establishing paternity.

The plain language of § 767.075(2)(b), STATS., permits the county to hire a corporate attorney to act as guardian ad litem for the minor child in a paternity action. As Kenneth correctly points out, § 767.075(2)(a) provides that a corporation counsel only represents the State. Thus, when the corporation counsel appears on behalf of the State, the corporation counsel is precluded from acting as a child's guardian ad litem. Section 767.075(2)(a). Subsection (a), however, specifically provides that its provisions are limited by subsec. (b). Subsection (b) expressly authorizes the county to hire

an attorney to act as a child's guardian ad litem. Based on our reading of subsec. (b), we conclude that when a corporate attorney is not acting on the State's behalf, he or she may participate as a guardian ad litem under the provisions of this subsection. Here, the corporation counsel was participating in the paternity action only as a guardian ad litem for Chad and was not acting on the State's behalf. Accordingly, his participation was proper.

Kenneth, however, argues that § 767.45(6)(c), STATS., prohibits an attorney designated with child support enforcement responsibility under § 59.458(1), STATS., from representing the State in an action regarding determination of paternity "and at the same time act[ing] as guardian ad litem for the child or the alleged child of the party." Section 767.45(6)(c). As we previously noted, we agree that the corporation counsel may not represent both the State and simultaneously act as a child's guardian ad litem. However, neither § 767.075, STATS., nor § 767.45(6)(c) prohibit the corporation counsel from acting solely as the child's guardian ad litem. Indeed, § 59.458(1), which specifically authorizes the county board to employ attorneys to provide support enforcement, envisions such representation. Therefore, because the language of § 767.075(2) and related statutes is consistent with the corporation counsel acting as the child's guardian ad litem in paternity actions, we conclude that the trial court properly denied Kenneth's motion to dismiss.

Finally, we reject Kenneth's claim that even if Felker was not acting on behalf of the State, Felker had an actual conflict of interest by virtue of his employment with the State that precluded him from acting as Chad's guardian ad litem. We agree that if the State's

699

interest in the paternity action conflicted with Chad's interests, Felker would be precluded from acting on Chad's behalf. In this case, however, there is nothing in the record to suggest that Chad's best interests were inconsistent with the interests sought to be protected by the State. Indeed, the record shows that the paternity determination furthered the State's interest in ensuring that Chad did not become a public charge and that it also furthered Chad's interests by providing him with the identity of his father and the financial assistance to which he was entitled. Therefore, because there is no actual conflict between the State's and Chad's respective interests, we conclude that there is no merit to Kenneth's assertion that a conflict of interest existed, which precluded the corporation counsel from acting as Chad's guardian ad litem.

*By the Court.*—Judgment affirmed.