IN RE the PATERNITY OF MAYONIA M. M.:

MAYONIA M.M., By Her Guardian Ad Litem, Attorney
Milton D. Schierland, Jr., Petitioner-Respondent,

v.

KEITH N., Respondent-Appellant.†

Court of Appeals

*No. 95–2838–FT. Submitted on briefs April 8, 1996.—Decided
May 7, 1996.*

(Also reported in 551 N.W.2d 31.)

† Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *John S. Bartholomew* of *Bartholomew & Greenhill* of Shawano.

On behalf of the petitioner-respondent, the cause was submitted on the brief of guardian ad litem, *Milton D. Schierland, Jr.*, of *Schierland Law Office* of Neenah.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Keith N. appeals a judgment adjudicating him the father of Mayonia M. M.[1] Keith argues the paternity action is barred as a result of a prior paternity action brought against him by the district attorney that was tried in 1976 and dismissed. Because we conclude the current paternity action is not barred, we affirm the judgment.

The facts are undisputed. Mayonia was born in 1976. That same year, the district attorney brought a paternity action against Keith, presumably pursuant to ch. 52, STATS., 1975.[2] After a trial to the court, the trial court concluded the state had not met its burden of proof that Keith was Mayonia's father and, accordingly, dismissed the complaint.

In 1993, Mayonia, then seventeen years old and acting through her guardian ad litem, brought a new cause of action for paternity pursuant to § 767.45(1)(a), STATS.[3] New blood tests were ordered and indicated a 99.98% probability that Keith is Mayonia's father. Ultimately, the parties agreed that Keith would allow a finding of paternity without contest, reserving his right to appeal whether the second action is barred in light of the 1976 paternity action. The trial court accepted this agreement and found that Keith is Mayonia's father.

---

[1] This is an expedited appeal under RULE 809.17,STATS.

[2] Although the record does not contain documents from the 1976 paternity action, we presume the district attorney acted under ch. 52, STATS., 1975, which governed support of dependents.

[3] Section 767.45, STATS., provides in relevant part:

**Determination of paternity. (1)** The following persons may bring an action or motion, including an action or motion for declaratory judgment, for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.405 or 891.41:

(a) The child.

The trial court also ordered Keith to pay $15,000 in back child support.

The sole issue on appeal is whether the second paternity action is barred. Keith argues the claim is barred by: (1) res judicata, or claim preclusion; and (2) collateral estoppel, or issue preclusion.[4] Whether a claim is barred by claim preclusion or issue preclusion is a question of law we review without deference to the trial court. *See Lindas v. Cady,* 183 Wis. 2d 547, 552, 515 N.W.2d 458, 460 (1994) (application of preclusion doctrines to a given set of facts is a question of law which is reviewed on appeal without deference to the trial court).

During the time between the first paternity case brought against Keith and the instant case, paternity law in Wisconsin changed significantly. Before July 1, 1981, the statutes gave no right to either the mother or child to commence an action to establish the child's paternity.[5] *In re R.W.L.,* 116 Wis. 2d 150, 153, 341 N.W.2d 682, 683 (1984). Effective July 1, 1981, the

[4] In *Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995), our supreme court adopted the terms claim preclusion and issue preclusion in lieu of res judicata and collateral estoppel, respectively. In light of this directive, this opinion uses the newly-adopted terms.

[5] However, in *In re R.W.L.,* 116 Wis. 2d 150, 163, 341 N.W.2d 682, 687 (1984), our supreme court concluded that "prior to the 1981 statute, [the child] had a right to bring a declaratory judgment action to establish paternity independent from the ch. 52 procedure commenced by the district attorney." The court also noted, "Before the adoption of the 1981 statute there apparently was no statute of limitations applicable to the child's commencement of a paternity action. If there were an applicable statute, sec. 893.33, 1977, the disability tolling provision, would have suspended its operation." *Id.*

Wisconsin legislature provided that a child may file a paternity action. *Id.* at 154, 341 N.W.2d at 683; *see also* § 767.45(1), STATS. Currently, such an action must be brought within nineteen years of the child's birth. Section 893.88, STATS.[6]

We addressed whether a child's paternity action may be barred by a previous action filed on behalf of the mother by a district attorney in *In re Chad M.G.,* 194 Wis. 2d 690, 694, 535 N.W.2d 97, 99 (Ct. App. 1995), which held that claim preclusion did not bar the child's action. This court observed that under the doctrine of claim preclusion, a final judgment on the merits in a prior action is conclusive and bars all subsequent actions between the same parties or their privies as to all matters that were or that might have been litigated in the prior action. *Id.* However, in *Chad M.G.,* we concluded that claim preclusion did not apply because the respective interests of a mother and child are not sufficiently identical to place them in privity. *Id.* at 695, 535 N.W.2d at 99.

Keith attempts to distinguish *Chad M.G.* because the case brought on behalf of Chad's mother by corporation counsel was dismissed for failure to prosecute, without having proceeded to a trial. In contrast, Keith notes, the first paternity case against him was fully tried by the district attorney. He argues, "There has been no claim here (and no basis to suggest) that the handling of the [first] matter was inadequate or that a Guardian ad Litem could have done any better under the law existing at the time."

---

[6] Section 893.88, STATS., provides: "**Paternity actions.** Notwithstanding s. 990.06, an action for the establishment of the paternity of a child shall be commenced within 19 years of the date of the birth of the child or be barred."

 We are not persuaded that the existence of a full trial in Keith's first paternity case cures the problem we identified in *Chad M.G.*: neither mother and child, nor the state and the child, are in privity. *See id.* at 695, 535 N.W.2d at 99. As we noted in *In re D.S.L.*, 159 Wis. 2d 747, 752, 465 N.W.2d 242, 244 (Ct. App. 1990):

> A child in a paternity proceeding can have many interests divergent from those of the state or of the child's mother. The state's primary interest is to protect the public from the burden of supporting children born out of wedlock where fathers are financially able to contribute to their maintenance. *In re R.W.L.*, 116 Wis. 2d 150, 161, 341 N.W.2d 682, 687 (1984). The mother may have a variety of reasons for not initiating paternity proceedings, including a continuing relationship with the father, or a desire to avoid the disapproval of her family or the community. *Id.* at 160-61, 341 N.W.2d at 686.

The child, however, can be interested in determining his or her right to seek inheritance and the father's right to seek custody, obtaining a complete medical history, amassing genealogical information or establishing a meaningful bond with the father. *D.S.L.*, 159 Wis. 2d at 752, 465 N.W.2d at 244.

 Next, Keith argues that issue preclusion bars Mayonia's claim because privity or sufficient identity of parties is not necessary to support a contention that the case is barred on the grounds of issue preclusion. In *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995), our supreme court explained that issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually

litigated and decided in a prior action. Issue preclusion is a narrower doctrine than claim preclusion and requires courts to conduct a "fundamental fairness" analysis before applying the doctrine. *Id.* at 551, 525 N.W.2d at 727. Under this fundamental fairness analysis, courts consider an array of factors in deciding whether issue preclusion is equitable in a particular case. *Id.*[7]

█

Although issue preclusion was originally permitted only if the parties were mutually bound by the first court's judgments, the development of the doctrine has removed the mutuality requirement and adopted a more flexible approach toward its application. *See Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 690, 495 N.W.2d 327, 330, 331 (1993). Thus, issue preclusion may apply where the party against whom the plea is raised was a party to a prior action and had full opportunity to litigate the issue. *See id.* at 691, 495 N.W.2d at 331. •

---

[7] Courts may consider some or all of the following factors: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of the proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of issue preclusion to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action. *Michelle T. v. Crozier,* 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330-31 (1993).

For example, offensive issue preclusion occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. *Id.* at 684 n.1, 495 N.W.2d at 328 n.1. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant. *Id.*

If Keith was asserting offensive or defensive issue preclusion, we would consider the factors enumerated in *Michelle T.* to determine whether Mayonia should be precluded from litigating the issue of Keith's paternity. However, the situation here constitutes neither defensive issue preclusion nor offensive issue preclusion because Keith is attempting to preclude an individual who was not a party or privy in the first paternity action from relitigating an issue Keith won in that action. It is a fundamental premise of preclusion law that nonparties to a prior decision cannot be bound by it unless they had sufficient identity of interest with a party that their interests are deemed to have been litigated. *See In re Birmingham Reverse Discrimination Employment Litigation,* 833 F.2d 1492, 1498 (11th Cir. 1987), *aff'd,* 490 U.S. 755 (1989). Indeed, "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7 (1979).[8]

_____

[8] *See also Blonder-Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue."); *Parker v. Williams,* 862 F.2d 1471, 1474 (11th Cir. 1989) ("The due process clauses of the

Because Mayonia has a right to bring her own paternity action, *see* § 767.45(1)(a), STATS., and, as we have already concluded, was not a party or privy in the first paternity action against Keith, it would be a violation of her due process rights to preclude her from litigating the issue of Keith's paternity. *See Parklane Hosiery,* 439 U.S. at 327 n.7. Therefore, we reject Keith's argument that issue preclusion bars the second paternity action against him.

Keith argues that if this court allows Mayonia's paternity action against him, judgments throughout the state dismissing actions against putative fathers that were commenced by district attorneys under the old ch. 52, STATS., procedure will have no practical effect. Instead, new actions could now be brought which would "negate that which was thought to be long since resolved." This is especially unjust, Keith argues, because the district attorney in his first case vigorously and aggressively pursued the matter through to a conclusion by a trial.

As we recognized in *Chad M.G.,* a father once acquitted of a paternity charge brought by the mother, or the state, can be subject to two separate paternity proceedings. *See id.* at 696, 535 N.W.2d at 100. While Keith argues this is unjust, the solution to this problem is not to conclude that there is an identity of interests between the mother and the child or, as in Keith's case, the state and the child. Rather, as we stated in *Chad M.G.*:

---

Fifth and Fourteenth Amendments require precluded parties to have at least one full and fair opportunity to litigate an issue before being bound by a prior determination of that issue.") (footnote omitted).

> [W]e recommend that when a paternity action is
> initiated by a party, trial courts take affirmative
> steps to ensure that those persons whose similar
> interests remain unlitigated are added as addi-
> tional parties. In this way, the first judgment will
> have preclusory effects on all individual parties to
> the action, and the courts and defendants will not
> be confronted with a series of sequential claims
> identical to previously resolved judicial matters.

*Id.* at 697, 535 N.W.2d at 100.

██

We recognize that it is impossible for Keith to go back in time, join Mayonia in the first action and thereby avoid a second paternity action. While it is true that for the last seventeen years Keith has gone on with his life believing that the paternity matter was settled, Mayonia has due process rights that must be protected. Because Mayonia was not a party or privy to the first paternity action, she is entitled to pursue her action against Keith.

For the foregoing reasons, we conclude the doctrines of claim preclusion and issue preclusion do not bar Mayonia's paternity action against Keith. Therefore, the judgment adjudicating paternity is affirmed.

*By the Court.*—Judgment affirmed.