TEACHER RETIREMENT SYSTEM OF TEXAS, a Texas Public Pension Fund and TRST Milwaukee, Inc., A Texas corporation, Plaintiffs,

v.

BADGER XVI LIMITED PARTNERSHIP, A Texas limited partnership, J. McDonald Williams, Joel C. Peterson, Jon D. Hammes, Francis Brzezinski, Harlan R. Crow and Skidmore, Owings & Merrill, a Texas partnership, Defendants,

J. McDonald WILLIAMS, Joel C. Peterson, Jon D. Hammes, Francis Brzezinski and Harlan R. Crow, Third Party Plaintiffs,

v.

SKIDMORE, OWINGS & MERRILL, a Texas partnership, Third Party Defendant-Appellant,

Lawrence Shelton DOANE and S.T.S. Consultants, Ltd., Additional-Third Party Defendants,

LE JUENE INVESTMENT INC., Additional-Third Party Defendant-Co-Appellant,

ABC INSURANCE COMPANY, DEF Insurance Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company, PQR Insurance Company and STU Insurance Company, Additional-Third Party Defendants,

*See Callaghan's Wisconsin Digest, same topic and section number.

AARON BUILDING CORPORATION, f/k/a Morse/Diesel, Inc.,
Additional-Third Party Defendant-Respondent-Cross
Respondent,

J. H. FINDORFF & SON, INC., Anthony Grignano
Company and W. J. Butzen Roofing and Sheet Metal,
Additional-Third Party Defendants-Respondents,

WSA, INC. HARMON CONTRACT, Additional-Third Party
Defendant-Respondent-Cross Appellant.

Court of Appeals

*No. 95–1710. Submitted on briefs September 16,
1996.—Decided October 22, 1996.*

(Also reported in 556 N.W.2d 415.)

534

535

On behalf of the third party defendant-appellant Skidmore, Owings & Merrill, the cause was submitted on the briefs of *Donald R. Peterson* and *Peter F. Mullaney* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

On behalf of the additional third-party defendant-co-appellant Le Juene Investment, Inc., the cause was submitted on the briefs of *James J. Dries* and *Kurt R. Anderson* of *Nelson, Dries & Zimmerman, S.C.*, of counsel, of Brookfield, Wisconsin.

On behalf of the additional-third party defendant-respondent-cross respondent Aaron Building Corporation, f/k/a Morse/Diesel, Inc., the cause was

submitted on the briefs of *Randall L. Nash* of *O'Neil, Cannon & Hollman, S.C.*, of Milwaukee; and *Randall C. Allen* and *Peter M. D'Ambrosio* of *Smith, Pachter, McWhorter & D'Ambrosio, P.L.C.*, of counsel, of Vienna, Virginia.

On behalf of the additional-third party defendants-respondents J.H. Findorff & Son, Inc., and Anthony Grignano Company, the cause was submitted on the briefs of *James R. Cole* and *Valerie L. Bailey-Rihn* of *Quarles & Brady*, of Madison; and *Richard G. Niess* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.*, of Madison.

On behalf of the additional-third party defendant-respondent W.J. Butzen Roofing and Sheet Metal, the cause was submitted on the briefs of *Rocke A. Calvelli* and *Dorothy H. Dey* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.*, of Milwaukee.

On behalf of the additional-third party defendant-respondent-cross appellant WSA, Inc. Harmon Contract, the cause was submitted on the briefs of *Ted A. Warpinski* and *Matthew W. O'Neill* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. These appeals and cross-appeals involve disputes between the current owner of an office complex in Milwaukee known as the Milwaukee Center Office Tower, the general contractor and some of the subcontractors on the project, and the project's architect. The disputes concern claims that the tower was improperly constructed and not water-tight. The issues on this appeal imbricate one another and this matter has generated twelve main, response, and reply briefs as well as three large boxes containing the

appellate record. A brief overview of the parties and the disputes is necessary to provide moorings for our analysis.

## I.

Teacher Retirement System of Texas was the mortgagee of the office complex. As the result of foreclosure proceedings, Teacher Retirement System, through its wholly owned subsidiary, TRST Milwaukee, Inc., is now the owner.[1] Badger XVI Limited Partnership was the owner and mortgagor.[2]

J. McDonald Williams, Joel C. Peterson, Jon D. Hammes, Francis Brzezinski, and Harlan R. Crow are both partners in Badger XVI and tenants at the office complex under a master lease. When it still owned the building, Badger XVI assigned Badger XVI's lessor's interests in the office complex's master lease to Teacher Retirement System.

This case was started when Teacher Retirement System sued Williams, Peterson, Hammes, Brzezinski, and Crow, claiming that they did not make the required payments under the assigned master lease. Later, Teacher Retirement System filed an amended complaint against these defendants, claiming that they breached guarantees that the office complex "would be completed in accordance with the plans and specifications," and, with the exception of Crow, breached an agreement to hold Teacher Retirement

---

[1] For ease of reference, the building's owner will be referred to as Teacher Retirement System throughout this opinion.

[2] Milwaukee Center Office Tower was built by a group of entities and individuals connected with the Texas real-estate developer Trammel Crow. For ease of reference, the building's owner prior to Teacher Retirement System will be referred to as Badger XVI.

538

System harmless for any liability resulting from construction liens on the property.

Williams, Peterson, Hammes, Brzezinski, and Crow impleaded Skidmore, Owings & Merrill, the architectural firm that designed the office complex, claiming that if the defendants were liable to Teacher Retirement System because the building was not properly constructed, they should be reimbursed by Skidmore, which, they alleged, was ultimately responsible. Williams, Peterson, Hammes, Brzezinski, and Crow also sought damages from Skidmore for lost or reduced rental income as a result of alleged construction defects.

Subsequently, Teacher Retirement System asserted claims against Skidmore for damages it purportedly suffered as the result of the architect's alleged negligence. Skidmore impleaded Morse/Diesel, the project's general contractor, Anthony Grignano Company, the subcontractor responsible for the tower's exterior brick, W.J. Butzen Roofing and Sheet Metal, the subcontractor responsible for the flashing, L.L. Le Juene Steel, Le Juene Investment's predecessor, which was the subcontractor that provided steel shelf angles for the project, J.H. Findorff & Son, Inc., the concrete subcontractor that installed the steel shelf angles, and WSA, Inc. d/b/a Harmon Contract, the subcontractor that installed the windows. Skidmore contended that it was entitled to contribution from the contractors and that it was a third-party beneficiary of Morse/Diesel's agreement to indemnify the tower's owners for any construction-defect damages.

Prior to the commencement of this action, Harmon sued Morse/Diesel, and Badger XVI seeking funds that it claimed were improperly withheld from it. Badger XVI, in turn, asserted that Harmon was responsible for

the water leakage.[3] Skidmore was not a party to that lawsuit. The trial court stayed the Harmon action to permit the dispute to be arbitrated, in conjunction with a then-ongoing arbitration between Badger XVI, Morse/Diesel and other subcontractors. *See* § 788.02, STATS. Skidmore was neither a party to that arbitration nor did it sign the subcontract between Morse/Diesel and Harmon that provided for arbitration. Indeed, under the arbitration clause, Skidmore could not have become a party to the arbitration.[4]

Ultimately, the arbitration was settled and, as relevant to this action, the settlement agreement provided that Badger XVI (and all related entities, see footnote 1, *supra*), denominated by the release as "Owner," "hereby and forever release and discharge"

---

[3] Files of the Circuit Court for Milwaukee County, of which we may take judicial notice, *see* RULE 902.01(6), STATS. ("Judicial notice may be taken at any stage of the proceeding."); *S.E. v. Waukesha County*, 159 Wis. 2d 709, 712 n.1, 465 N.W.2d 231, 232 n.1 (Ct. App. 1990) (appellate court takes notice of circuit court file), reveal that similar actions were also brought by two subcontractors that are not parties to this action: Milwaukee Marble and Granite Company (Milwaukee County Circuit Court case number 90-CV-11496) and Supersky Products, Inc. (Milwaukee County Circuit Court case number 91-CV-010253). These two actions were consolidated. Additionally, First Bank (N.A.) brought an action to foreclose its mortgage (Milwaukee County Circuit Court case number 91-CV-004247).

[4] Paragraph 13.2 of the subcontract between Morse/Diesel and Harmon provides:

> Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to this Agreement under which such obligation arises, unless it is shown at the time the demand for arbitration is filed that . . . (4) such person or entity is not the Architect, his employee or his consultant.

540

entities listed on an attachment to the release, which, as relevant to this action, included: Morse/Diesel, Grignano, Harmon, and Findorff (but not Butzen or Le Juene). The release encompassed:

> any and all liabilities obligations, rights, claims and demands of every kind, present, conditional or contingent, whether known or unknown, arising out of any matters relating to the construction [of the Milwaukee Center Office Tower] including without limitation those matters raised [in the arbitration as well as] in the various lawsuits filed in the Circuit Court, Milwaukee County, Wisconsin (Case No's. 90-CV-011496 [the *Milwaukee Marble* action], 90-CV-010864 [the *Harmon* action], 91-CV-000996 [the Teacher Retirement System foreclosure action] and 91-CV-004247 [the *First Bank* foreclosure action][)].

The operative portion of the release reads:

> By this release, Owner, its agents, successors and assigns, intends [*sic*] only to release those parties listed on the attachment hereto, reserving all other claims, and specifically reserving claims against Butzen Roofing Co., Inc., and/or Skidmore and/or [an entity not party to this lawsuit.]

The Butzen dispute went to arbitration, and the panel found that Butzen was not responsible for the claimed damage. The trial court (not the trial court from which this appeal is taken) confirmed the award. *See* § 788.09, STATS. Skidmore was neither a party to the arbitration proceedings nor could it be; the subcontract between Morse/Diesel and Butzen had an arbitration clause identical to the one in the subcontract between Morse/Diesel and Harmon, quoted in footnote 4:

> Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to this Agreement under which such obligation arises, unless it is shown at the time the demand for arbitration is filed that . . . (4) such person or entity is not the Architect, his employee or his consultant.

Moreover, Skidmore was not given notice of the application to confirm the award.

The trial court granted summary judgment to Morse/Diesel, Findorff, Grignano, Butzen, and Harmon, dismissing Skidmore's claims against them. It dismissed the architect's claims against Butzen because Butzen had prevailed at the arbitration, where it was found not responsible for the water leakage, and the trial court found that Butzen's "equitable arguments" justified application of "claim preclusion" to bar Skidmore's attempt to hold Butzen liable for Butzen's alleged negligence.[5] The trial court dismissed Skidmore's claims against Morse/Diesel, Findorff,

---

[5] The Wisconsin Supreme Court has adopted the term "claim preclusion" as a replacement for "*res judicata*," and "issue preclusion" as a replacement for "collateral estoppel." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). "[U]nder claim preclusion 'a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings.' " *Ibid.* (citations and one set of quotation marks omitted; brackets by *Northern States Power*). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action. Unlike claim preclusion, an identity of parties is not required in issue

Grignano, and Harmon based on the release given to them by Badger XVI, which, the trial court ruled, was binding on Teacher Retirement System. The trial court concluded that "common liability" was a necessary element of a claim for contribution, and held that the contractors and Skidmore could not, therefore, have a "common liability" to Teacher Retirement System because the release relieved the contractors of any liability to Teacher Retirement System. Skidmore appeals from these rulings. The trial court also concluded that any third-party beneficiary rights Skidmore had against the contractors were also "extinguished by the release." Skidmore does not contest this latter determination.

As we have seen, Skidmore impleaded Le Juene. Le Juene cross-claimed against Morse/Diesel, Butzen, Findorff, Harmon, and Grignano, seeking contribution and indemnity. The trial court dismissed these cross-claims in conjunction with its grant of summary judgment to the contractors dismissing Skidmore's claims against them. Le Juene appeals, arguing that it did not have proper notice of the summary judgment proceedings, and that the contractors' prevailing summary-judgment motions did not seek dismissal of Le Juene's cross-claims. Le Juene was neither a party to the arbitration nor a signatory to the release.

Following the release given by Badger XVI to Morse/Diesel and various subcontractors (as relevant to this appeal: Morse/Diesel, Grignano, Harmon, and Findorff), Harmon and Morse/Diesel executed a separate settlement agreement under which Morse/Diesel agreed to "defend, indemnify and hold [Harmon] harmless for any and all liability to Owner,

preclusion." *Id.*, 189 Wis. 2d at 550–551, 525 N.W.2d at 727. We discuss and apply these concepts below.

other subcontractors, any party to the Arbitration proceeding or tenant in the Project, related to any claim resulting from or related to performance by [Harmon] of work in the project." When Harmon was named as a third-party defendant by Skidmore, Harmon tendered its defense to Morse/Diesel. Morse/Diesel refused the tender, and Harmon cross-claimed against Morse/Diesel. The trial court dismissed Harmon's cross-claim. Harmon contends that this was error, and seeks reinstitution of its cross-claim against Morse/Diesel if we reinstate Skidmore's claims against it.

## II.

The issues relevant to this appeal were decided on summary judgment. Summary judgment is used to determine whether there are any disputed issues for trial, and, if not, whether a party is entitled to judgment as a matter of law. RULE 802.08(2), STATS.; *U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The core issues presented by this appeal are whether the release given by Badger XVI to Morse/Diesel, Grignano, Harmon, and Findorff bars Skidmore's claims against them, and whether Skidmore's claims against Butzen are barred by Butzen's vindication at the arbitration proceeding, to which Skidmore was not a party. We discuss these issues in turn, and then discuss the ancillary issues presented by Le Juene and by Harmon.

A. *Skidmore.*

1. *Claims against Morse/Diesel, Findorff, Grignano, and Harmon.*

Skidmore alleges that it is being subjected to potential liability as the result of what Morse/Diesel, Findorff, Grignano, and Harmon (as well as Butzen, as discussed below) either did or failed to do, and has pleaded breach of contract and negligence claims against Morse/Diesel, and negligence claims against the others. As noted, the trial court dismissed Skidmore's contribution claims against Morse/Diesel, Findorff, Grignano, and Harmon because, in the trial court's view, the contractors were relieved of any liability to Teacher Retirement System by the Badger XVI release, and thus the contractors and Skidmore did not have a "common liability" to Teacher Retirement System for the latter's claimed damages.

Although common liability to an injured plaintiff is a prerequisite for contribution between those responsible for the plaintiff's damages, *General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 103, 549 N.W.2d 429, 431 (1996), whether "common liability" exists is determined at the time the damages were sustained and cannot be extinguished by one or more of those allegedly responsible for the plaintiff's damages subsequently settling with the plaintiff, *State Farm Mut. Auto. Ins. Co. v. Continental Casualty Co.*, 264 Wis. 493, 502–504, 59 N.W.2d 425, 429–430 (1953). If the rule were otherwise, the equitable doctrine of contribution could be made a dead letter by a settlement between some of the parties. *See id.*, 264 Wis. at 501, 59 N.W.2d at 429 (" 'Contribution is based on the simple demand of justice, often expressed in the

maxim that "equality is equity." ' ") (citation omitted).[6]
Whether there is sufficient common liability in this
complicated action to support claims for contribution is
a question of fact to be resolved at trial. *See State Farm*,
264 Wis. at 497, 59 N.W.2d at 427. This does not,
however, end our analysis. Skidmore also asserted
indemnification claims against the contractors, and
both roads lead to the same result.

"[I]ndemnity is a principle that 'shift[s] the loss
from one person who has been compelled to pay[,] to
another who on the basis of equitable principles should
bear the loss.' " *Brown v. LaChance*, 165 Wis. 2d 52, 64,
477 N.W.2d 296, 302 (Ct. App. 1991) (citation omitted).
The parties need not be joint tortfeasors. *Fuller v.
Riedel*, 159 Wis. 2d 323, 330, 464 N.W.2d 97, 100 (Ct.
App. 1990); *see General Accident Ins. Co. v. Schoendorf
& Sorgi*, 195 Wis. 2d 784, 798, 537 N.W.2d 33, 38 (Ct.
App. 1995) (common liability not necessary for
"[e]quity based recoupment"), *modified on other
grounds*, 202 Wis. 2d 98, 549 N.W.2d 429 (1996).

---

[6] Contrary to Morse/Diesel's contention, the rule that
measures common liability at the time the plaintiff has been
damaged is not limited to automobile-accident cases, even
though *State Farm* arose in that context, and applies whether
the underlying action resulting in one defendant bearing more
than its fair share of the plaintiff's loss is in tort or in contract.
*See State Farm Mut. Auto. Ins. Co. v. Schara*, 56 Wis. 2d 262,
264, 201 N.W.2d 758, 759 (1972) ("[A] cause of action for
contribution is separate and distinct from the underlying cause
of action whether that underlying cause sounds in contract or in
tort.") (applied and approved in *Kafka v. Pope*, 194 Wis. 2d 234,
240–241, 533 N.W.2d 491, 493–494 (1995)); *see also General
Accident Ins. Co. v. Schoendorf & Sorgi*, 195 Wis. 2d 784, 792,
537 N.W.2d 33, 36 (Ct. App. 1995), *modified on other grounds*,
202 Wis. 2d 98, 549 N.W.2d 429 (1996).

Although as a result of the Badger XVI-release Skidmore may not have contractual or third-party-beneficiary indemnification rights based on Morse/Diesel's agreement to indemnify the building's owner for defects in the construction, an issue that we do not have to decide, indemnification is an equitable doctrine that can apply even in absence of contract. *See Brown*, 165 Wis. 2d at 64, 477 N.W.2d at 302. Thus, there is a " 'right of indemnity . . . where one person is exposed to liability by the wrongful act of another in which he does not join.' " *Ibid.* (Citation omitted.) Even though not specifically denominated as such in its third-party complaint, Skidmore states indemnification claims under *Brown*'s formulation of equitable indemnification. *See Strid v. Converse*, 111 Wis. 2d 418, 422–423, 331 N.W.2d 350, 353 (1983) (complaint states claim for relief if the " 'operative facts' " alleged in the complaint show an " 'invasion of a protected right' " "even though the theory was not explicitly argued in the trial court") (citation omitted).[7]

Although an element of both equitable indemnity and contribution is payment beyond the payor's fair share, *Brown*, 165 Wis. 2d at 64, 477 N.W.2d at 302 (indemnity); *General Accident Ins. Co.*, 202 Wis. 2d at 103, 549 N.W.2d at 431–432 (contribution), there is no

---

[7] Although we need not discuss this in any detail, we also note that "legal subrogation" similarly " 'permits those who pay a claim that in equity should have been satisfied by another to recover that payment from the person or entity primarily liable.' " *General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 107, 549 N.W.2d 429, 433 (1996) (quoting from *General Accident Ins. Co. v. Schoendorf & Sorgi*, 195 Wis. 2d 784, 795, 537 N.W.2d 33, 37 (Ct. App. 1995)) (internal quotation marks omitted).

reason to compel two trials: the first trial in which Skidmore's liability, if any, to Teacher Retirement System would be determined, and the second trial, following Skidmore's payment of any judgment, to determine which, if any, of the contractors were responsible for a portion of that judgment. This would be an unnecessary imposition of fees and costs on the parties as well as being a waste of legal resources. *See* RULE 803.05, STATS. ("a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is *or may be* liable to the defending party for all or part of the plaintiff's claim against the defending party") (emphasis added); RULE 802.07(3), STATS. (cross-claim "may include a claim that the party against whom it is asserted is *or may be* liable to the cross claimant for all or part of a claim asserted in the action against the cross claimant") (emphasis added); *Wait v. Pierce*, 191 Wis. 202, 226–232, 210 N.W. 822, 823–825 (1926) (contingent claim for contribution can be heard at same proceeding that determines underlying action). Moreover, there is a consideration here that requires resolution of these issues prior to Skidmore's payment of any judgment or settlement—the Janus-faced spectre of double recovery and double liability.

■ Teacher Retirement System is bound by the Badger XVI release; there is no dispute about that. Teacher Retirement System thus relinquished any entitlement to recover from the released contractors for any damages sustained by Teacher Retirement System that are attributable to those contractors. This precludes not only Teacher Retirement System's direct recovery against Morse/Diesel, Findorff, Grignano, and Harmon for damages caused by them, but its indirect

548

recovery as well. If Skidmore were to be held responsible for damages caused in whole or in part by the released contractors, the following inequities would occur: On the one hand, if Skidmore were not permitted equitable recoupment against the responsible contractors, Skidmore would bear more than its fair burden. On the other hand, if Skidmore were permitted recovery against the released contractors, not only would Teacher Retirement System recover twice (the monies received pursuant to the settlement that were, undoubtedly, factored into Teacher Retirement System's cost for the property, plus that portion of the judgment paid by Skidmore that was attributable to the released contractors) but the released contractors would pay twice (their payments in settlement as well as their recoupment liabilities to Skidmore). Thus, the order entered by the trial court dismissing Skidmore's third-party claims against Morse/Diesel, Findorff, Grignano, and Harmon must be modified to provide that Skidmore's liability to Teacher Retirement System, if any, is to be determined after excluding that percentage of damage-causation attributable to these contractors. This effectuates the trial court's intent, as stated in its memorandum opinion, that "Skidmore is responsible only for its contractual duties, and the effect its breach, if any, damaged" Teacher Retirement System.

2. *Claims against Butzen.*

■ As we have pointed out in footnote 3, unlike "claim preclusion," "issue preclusion" does not require an "identity of parties" to foreclose relitigation of an issue that has "been litigated and decided in a prior action." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541,

550–551, 525 N.W.2d 723, 727 (1995). We review *de novo* whether issue preclusion applies. *Mayonia M.M. v. Keith N.*, 202 Wis. 2d 461, 465, 551 N.W.2d 31, 33 ( Ct. App. 1996). There are two aspects of our analysis: due process and fundamental fairness. We discuss both.

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979). Thus, the use of issue preclusion to bind a non-party to the earlier action must, *per force*, be limited to those situations where there is a "sufficient identity of interest" between the party to be bound and the unsuccessful litigant in the prior action so that the former's interests in the matter "are deemed to have been litigated." *Mayonia M.M.*, 202 Wis. 2d at 469, 551 N.W.2d at 35. "[O]ffensive issue preclusion occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party," and "[d]efensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant." *Id.*, 202 Wis. 2d at 469, 551 N.W.2d at 34. Neither situation attends here. Rather, Butzen seeks to bind Skidmore to the results of an arbitration to which Skidmore was never a party; Butzen is attempting to use defensive issue preclusion to prevent Skidmore from asserting claims that Skidmore has *not* "previously litigated and lost."

*Jensen v. Milwaukee Mutual Ins. Co.*, 204 Wis. 2d 231, 554 N.W.2d 232 (Ct. App. 1996), notes that prior to that decision "the defensive use of issue preclusion

against a nonparty in the former action has never been successfully used in any reported appellate decision," although "its potential use has been recognized." *Id.*, 204 Wis. 2d at 236, 554 N.W.2d at 234. *Jensen* applied issue preclusion to foreclose a passenger injured when the car driven by her husband collided with a truck operated by Milwaukee Mutual's insured from relitigating the case when an earlier lawsuit brought by the husband against Milwaukee Mutual and its insured resulted in defense verdicts, because there was sufficient identity of interest between the interests of the husband/driver and the wife/passenger. *Id.*, 204 Wis. 2d at 236-241, 554 N.W.2d at 234-236. On the other hand, there was insufficient identity of interest in *Mayonia M.M.* to permit a paternity defendant to foreclose relitigation of his paternity in an action brought by his alleged daughter even though he had prevailed in an earlier paternity action brought by the district attorney, because neither the child's mother nor the child could commence such an action when the district attorney's action was filed. *Mayonia M.M.*, 202 Wis. 2d at 464, 469–470, 551 N.W.2d at 33, 35.

If due-process concerns are met, application of issue preclusion requires a "fundamental fairness" analysis, which may overlap due-process considerations. *See Northern States Power Co.*, 189 Wis. 2d at 551, 525 N.W.2d at 727. Among the factors to be considered that are relevant here are: whether "the party against whom preclusion is sought" could have, "as a matter of law, obtained review of the judgment"; whether there are "significant differences in the quality or extensiveness of proceedings between the two courts" that "warrant relitigation"; whether the "party seeking preclusion had a lower burden of

persuasion in the first trial than in the second"; whether there "are matters of public policy and individual circumstances involved that would render the application of collateral estoppel [now "issue preclusion"] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330–331 (1993). [8]

The *Crozier* factors militate against application of issue preclusion against Skidmore here. First, Skidmore could not have sought judicial review of the arbitration determination. *See* § 788.09, STATS. (application to confirm arbitration award may be made by "any party to the arbitration"). Second, arbitration proceedings are less formal than trials and are subject to exceedingly deferential review by the courts. *See* §§ 788.10(1) and 788.11(1), STATS.; *Employers Ins. of Wausau v. Jackson*, 190 Wis. 2d 597, 613, 527 N.W.2d 681, 687 (1995). [9] Third, as we have seen, the

---

[8] There is an additional factor mentioned by *Michelle T.*: whether "the question is one of law that involves two distinct claims or intervening contextual shifts in the law." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330 (1993).

[9] Section 788.10(1), STATS., provides:

**Vacation of award, rehearing by arbitrators.(1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

agreement to arbitrate in Butzen's subcontract specifically precluded Skidmore's joining the arbitration. In light of this and in light of no evidence in the record to which we have been pointed that shows a sufficient identity of interest between Skidmore and Morse/Diesel, which was Butzen's adverse party in the arbitration, application of issue preclusion against Skidmore would violate both Skidmore's due-process rights and the concepts of fundamental fairness. We reverse the trial court's dismissal of Skidmore's claims against Butzen. We do not decide, however, whether, in light of the arbitration award vindicating Butzen, Skidmore may be held liable to Teacher Retirement System for the percentage of damage-causation that is attributable to Butzen; the issue has not been briefed and may require fact-finding to determine whether Teacher Retirement System is bound by the arbitration award vindicating Butzen.

controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Section 788.11(1), STATS., provides:

**Modification of award.(1)** In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

## B. *Le Juene.*

Le Juene claims that it did not receive proper notice of the summary judgment proceedings that resulted in the trial court's dismissal of not only Skidmore's claims against Morse/Diesel and the subcontractors but also of its cross-claims. In light of our determination that the trial court's grant of summary judgment to Morse/Diesel and the subcontractors in connection with the claims asserted by Skidmore must be reversed, we do not analyze or decide Le Juene's argument that it did not receive requisite notice.[10] As with Skidmore, Le Juene was neither a party to the arbitration nor to the settlement. We reverse the trial court's dismissal of Le Juene's cross-claims, which will be subject to the same formula to prevent double recovery and double liability as applicable to those asserted by Skidmore. Le Juene's cross-claim against Butzen is subject to the same caveat we noted above—namely, if Teacher Retirement System is bound by the arbitration award in Butzen's favor, then Skidmore is not liable to Teacher Retirement System for the percentage of damage-causation attributable to Butzen, and, in that case, Le Juene would not be liable to Skidmore for that percentage, and Le Juene's cross-claim against Butzen should be dismissed following remand and whatever fact-finding is necessary.

## C. *Harmon's tender to Morse/Diesel.*

Harmon claims that the indemnity provision in its settlement agreement with Morse/Diesel required

---

[10] *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

Morse/Diesel to defend and indemnify it in connection with Skidmore's claims. As noted, the trial court dismissed Harmon's cross-claim against Morse/Diesel.

The interpretation of a contract is a question of law that we review *de novo*. *Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847, 848 (Ct. App. 1990). Unambiguous language in a contract must be enforced as it is written. *Cernohorsky v. Northern Liquid Gas Co.*, 268 Wis. 586, 593, 68 N.W.2d 429, 433 (1955). Language in a contract is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Here, the language is clear.

As we have seen earlier, Morse/Diesel agreed to "defend, indemnify and hold [Harmon] harmless for any and all liability to Owner, other subcontractors, any party to the Arbitration proceeding or tenant in the Project, related to any claim resulting from or related to performance by [Harmon] of work in the project." Skidmore is neither an "Owner," an "other subcontractor," a "party to the Arbitration proceeding," nor a "tenant in the Project." Skidmore's claims against Harmon are not within the scope of the settlement agreement's promise by Morse/Diesel to defend and indemnify Harmon. Although Harmon argues that the agreement is broad enough to encompass Skidmore's liability to the "Owner," for which Harmon may be partially responsible, we disagree; the clear language of the agreement does not so provide.[11] We reject Harmon's attempt to rewrite the indemnification

---

[11] We therefore need not analyze whether the term "Owner" in the agreement includes Teacher Retirement System..

agreement, and affirm the trial court's dismissal of Harmon's cross-claim against Morse/Diesel.

## III.

In summary, we decide this appeal as follows:

1. The trial court's grant of summary judgment dismissing Skidmore's claims against Morse/Diesel, Findorff, Grignano, and Harmon is reversed and remanded with directions that the order be modified to provide that Skidmore's liability to Teacher Retirement System, if any, is to be determined after excluding that percentage of damage-causation that is attributable to Morse/Diesel, Findorff, Grignano, and Harmon.

2. The trial court's grant of summary judgment dismissing Skidmore's claims against Butzen is reversed. We do not decide whether, in light of the arbitration award vindicating Butzen, Skidmore may be held liable to Teacher Retirement System for the percentage of damage-causation that is attributable to Butzen. If Skidmore is not so liable, its claims against Butzen should be dismissed.

3. The trial court's grant of summary judgment dismissing Le Juene's cross-claims against Morse/Diesel, Butzen, Findorff, Grignano, and Harmon is reversed and remanded with directions that the order be modified to provide that Le Juene's liability, if any, to Skidmore based on whatever liability Skidmore may have to Teacher Retirement System is to be determined after excluding that percentage of damage-causation that is attributable to Morse/Diesel, Findorff, Grignano, and Harmon. We do not decide, however, whether, in light of the arbitration award vindicating Butzen, Skidmore may be held liable to Teacher Retirement System for the percentage

of damage-causation that is attributable to Butzen; if Skidmore is not liable to Teacher Retirement System for the percentage of damage-causation that is attributable to Butzen, Le Juene would also not be so liable for that percentage, and Le Juene's cross-claim against Butzen should be dismissed.

4. The trial court's dismissal of Harmon's cross-claim against Morse/Diesel is affirmed.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.