**2021 WI App 34**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP978

Complete Title of Case:

**TYLER A. MUELLER AND LINDSEY MUELLER,**

    **PLAINTIFFS-INTERVENING RESPONDENTS,**

  **V.**

**BULL'S EYE SPORT SHOP, LLC AND**
**THE CINCINNATI INSURANCE COMPANY,**

    **DEFENDANTS-THIRD-PARTY PLAINTIFFS-APPELLANTS,**

  **V.**

**JORDAN M. MUELLER AND AMERICAN MODERN PROPERTY AND**
**CASUALTY INSURANCE CO.,**

    **THIRD-PARTY DEFENDANTS-RESPONDENTS.**

---

| | |
|---|---|
| Opinion Filed: | April 29, 2021 |
| Submitted on Briefs: | December 10, 2020 |

---

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Graham, JJ. |
|   Concurred: | |
|   Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Daniel W. Varline* and *Todd Joseph Koback* of *Davczyk & Varline, LLC*, Wausau. |

Respondent
ATTORNEYS:        On behalf of the third-party defendants-respondents, the cause was submitted on the brief of *Gregory J. Duncan* and *Stephen M. Warner* of *Arthur, Chapman, Kettering, Smetak & Pikala, P.A.*, Minneapolis, Minnesota.

Intervening Respondent
ATTORNEYS:        On behalf of the plaintiffs-intervening respondents, the cause was submitted on the brief of *C. M. Bye, Martha H. Heidt* and *Cristina M. Wirth* of *Bye, Goff & Rohde, Ltd.*, River Falls.

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 29, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP978**

Cir. Ct. No.  2018CV81

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

TYLER A. MUELLER AND LINDSEY MUELLER,

   PLAINTIFFS-INTERVENING RESPONDENTS,

 V.

BULL'S EYE SPORT SHOP, LLC AND THE CINCINNATI
INSURANCE COMPANY,

   DEFENDANTS-THIRD-PARTY PLAINTIFFS-APPELLANTS,

 V.

JORDAN M. MUELLER AND AMERICAN MODERN PROPERTY
AND CASUALTY INSURANCE COMPANY,

   THIRD-PARTY DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Clark County: LYNDSEY BRUNETTE, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

¶1    FITZPATRICK, P.J.   Tyler Mueller was injured while hunting when a gun he was holding discharged.  The gun was owned by Tyler's brother, Jordan Mueller.[1]

¶2    Tyler brought this lawsuit against Bull's Eye Sports Shop, the business that assembled the gun and sold it to Jordan, based on Bull's Eye's alleged negligence.  Bull's Eye brought a third-party claim against Jordan, and Tyler later brought a claim against Jordan, both alleging that Jordan's negligence caused Tyler's injuries.

¶3    Jordan was immediately aware of the incident in which Tyler was injured and later became aware of potential litigation regarding the gun and Tyler's injuries.  Nevertheless, after becoming aware of potential litigation, Jordan had the gun materially altered, and a part of the gun is still missing.  Both Tyler and Bull's Eye brought motions in the circuit court asking that Jordan be sanctioned for his spoliation of the gun evidence.[2]  Prior to the circuit court ruling on those motions, Tyler and Jordan entered into a *Pierringer* release, and Jordan was dismissed from this action based on the terms of that release.[3]  The circuit court found that Jordan intentionally spoliated evidence regarding the gun.  As a sanction for those intentional acts of Jordan, the circuit court ordered that, at the trial in this case, the

---

[1]  We generally refer to Tyler and Jordan by their first names to avoid confusion.

[2]  "Spoliation is the 'intentional destruction, mutilation, alteration, or concealment of evidence.'"  *American Fam. Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶21, 319 Wis. 2d 397, 768 N.W.2d 729 (quoting BLACK'S LAW DICTIONARY 1409 (7th ed. 1999)).

[3]  A *Pierringer* release "operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to non[-]settling defendants and to bar subsequent contribution actions the non[-]settling defendants might assert against the settling defendants."  *Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis. 2d 123, 131, 388 N.W.2d 908 (1986) (citing *Pierringer v. Hoger*, 21 Wis. 2d 182, 193, 124 N.W.2d 106 (1963)).

jury will receive an instruction from the court stating that the jury may draw an adverse inference against Jordan regarding that spoliated evidence.

¶4      Bull's Eye appeals and makes two primary arguments. First, Bull's Eye contends that the circuit court erred in deciding which sanction to impose against Jordan for his spoliation of the gun evidence. Bull's Eye argues that the circuit court should have dismissed Tyler's claims against it as a sanction for Jordan's spoliation of evidence. We reject Bull's Eye's argument and conclude that the circuit court did not erroneously exercise its discretion in selecting the spoliation inference instruction as the sanction. Second, Bull's Eye argues that Tyler's claim against Bull's Eye must be dismissed based on the following chain of propositions advanced by Bull's Eye. Indemnity principles require that, based on Jordan's intentional spoliation of evidence, Jordan must indemnify Bull's Eye for any negligent conduct of Bull's Eye that caused Tyler's injuries. By operation of the *Pierringer* release between Tyler and Jordan, Jordan's intentional conduct in spoliating evidence is imputed to Tyler, which in turn requires that Tyler indemnify Bull's Eye for any negligent conduct of Bull's Eye that caused Tyler's injuries. As a result, according to Bull's Eye, Tyler's claim against Bull's Eye must be dismissed. We reject Bull's Eye's argument because, under these circumstances, Jordan does not owe an indemnity obligation to Bull's Eye based on his intentional spoliation of evidence.

## BACKGROUND

¶5      The following material facts are not in dispute.

3

¶6      Tyler was injured in November 2017 when the AR-15 he was carrying while hunting accidently discharged multiple times.[4]  Tyler was struck in the foot and sustained substantial injuries.

¶7      Jordan purchased the AR-15 from Bull's Eye.  In addition to selling the rifle, Bull's Eye also assembled the rifle prior to purchase.

¶8      Immediately following the shooting accident, the AR-15 was taken into possession by law enforcement.  The gun was returned to Jordan in January 2018.  In February 2018, Jordan took the gun to Bull's Eye.  Prior to that time, and as discussed later in this opinion, Jordan received communications from Tyler indicating that litigation regarding the gun and Tyler's injuries was likely.  A Bull's Eye employee who inspected the AR-15 made material changes to the gun with Jordan's permission.[5]  A retention plate installed in the gun by Bull's Eye has since gone missing.

¶9      In May 2018, Tyler[6] brought this lawsuit against Bull's Eye and its liability insurer, Cincinnati Insurance Company,[7] alleging that Bull's Eye's negligence was a cause of the injuries Tyler suffered as a result of the shooting

---

[4]  We follow the lead of the parties and the circuit court and refer to the AR-15 style rifle at issue in this case as either "the AR-15" or "the gun."  We refer to the November 2017 incident in which Tyler was injured as "the shooting accident."

[5]  The circuit court determined that the record does not support a finding that Bull's Eye or its employee knew at that time that the gun was a cause of injuries or that litigation may be commenced regarding the gun and those injuries.

[6]  Lindsey Mueller is Tyler's spouse and is also a plaintiff in this lawsuit.  For convenience, we refer to Tyler and Lindsey collectively as plaintiffs as "Tyler."

[7]  We refer to Bull's Eye and Cincinnati Insurance Company collectively as defendants as "Bull's Eye."

accident. Bull's Eye brought a third-party complaint against Jordan alleging that Jordan's negligence "caused or contributed to the injuries and damages alleged by … Tyler." In an amended complaint, Tyler realleged the allegations set forth in his original complaint against Bull's Eye, and also stated a claim against Jordan and Jordan's liability insurer, American Modern Property and Casualty Insurance Company, asserting that Jordan's negligence was a cause of Tyler's injuries.[8]

¶10 Tyler and Bull's Eye filed separate motions in the circuit court requesting sanctions against Jordan for spoliating the gun evidence. Each alleged that, even though Jordan knew that the condition of the AR-15 at the time of the shooting accident would be a central issue in litigation, Jordan manipulated the AR-15 after the shooting accident, had Bull's Eye make material changes to the gun, and is responsible for critical evidence now missing. Bull's Eye requested in that motion that, as a potential sanction for Jordan's spoliation of evidence, the circuit court should read to the jury at trial the standard instruction on spoliation of evidence which instructs the jury that it may, but is not required to, infer that a party spoliated evidence because such evidence is unfavorable to that party.[9]

---

[8] We refer to Jordan and American Modern Property Casualty Insurance Company collectively as defendants as "Jordan."

[9] WISCONSIN JI—CIVIL 400 states in its standard form:

> You may, but are not required to, infer that (plaintiff) (defendant) (describe spoliation) because producing that evidence would have been unfavorable to (plaintiff)'s (defendant)'s interest.

> (For example: The defendant destroyed all of his medical records for patient care provided prior to 2005. You may, but are not required to, infer that the defendant destroyed his medical

¶11 About one month after Tyler and Bull's Eye filed those motions, the circuit court and Bull's Eye were notified that Tyler and Jordan had entered into a *Pierringer* release in exchange for Jordan's insurer paying Tyler its policy limits of $300,000. As noted, a *Pierringer* release "operates to impute to the settling plaintiff [(here, Tyler)] whatever liability in contribution the settling defendant [(here, Jordan)] may have to non[-]settling defendants [(here, Bull's Eye)], and to bar subsequent contribution actions the non[-]settling defendants might assert against the settling defendants." *Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis. 2d 123, 131, 388 N.W.2d 908 (1986) (citing *Pierringer v. Hoger*, 21 Wis. 2d 182, 193, 124 N.W.2d 106 (1963)). In addition, in a *Pierringer* release, the settling plaintiff is generally limited in his or her recovery from a non-settling defendant to the unsatisfied portion of the damages; that is, the part of the damages attributable to the non-settling defendant. *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 197-98, 299 N.W.2d 234 (1980).

¶12 Approximately one month after Tyler and Jordan entered into the *Pierringer* release, Bull's Eye filed a supplemental motion for sanctions against Jordan. Bull's Eye alleged in that motion that, in addition to the spoliation of the AR-15 described in its previous motion, Jordan also spoliated cell phone data and records. In that supplemental motion, Bull's Eye requested that the circuit court grant the sanctions it requested in its previous motion, including the spoliation inference instruction. Further, Bull's Eye requested relief based on the operation of the *Pierringer* release. More particularly, Bull's Eye requested that the circuit court

---

records from prior to 2005 because producing that evidence would
have been unfavorable to defendant's interest.)

For convenience, we refer to this as the "spoliation inference instruction."

6

grant "judgment against [Jordan] and in favor of [Bull's Eye] on [Bull's Eye's] Third-Party Complaint," which, according to Bull's Eye, then "entitl[ed] [Bull's Eye] to dismissal of all of [Tyler's] claims against [Bull's Eye] pursuant to the *Pierringer* Release entered into by [Tyler]."

¶13 Later, the circuit court:

- Dismissed all claims against Jordan, including Bull's Eye's third-party complaint against Jordan, based on the *Pierringer* release, and did not grant Bull's Eye's request to dismiss Tyler's claims against it based on operation of the *Pierringer* release.

- Found that Jordan engaged in the intentional spoliation of the gun evidence; as a sanction for that spoliation, the circuit court granted Bull's Eye's request that, at trial, the jury be read the spoliation inference instruction, and denied all other requests for sanctions.[10]

¶14 Bull's Eye appealed the orders of the circuit court, which are final as to Jordan, and named Jordan as the sole respondent in this appeal. We granted Tyler's request to participate in this appeal. *See* WIS. STAT. RULE 809.13 (2019-20)[11] (providing the court of appeals may permit intervention in an appeal based on the criteria for intervention in the circuit court); *Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶120, 307 Wis. 2d 1, 745 N.W.2d 1 (stating permissive intervention is

---

[10] The circuit court also found that Jordan failed to preserve material cell phone evidence, but that his failure to do so was negligent and not intentional; the circuit court sanctioned Jordan for those acts by ordering Jordan to pay Bull's Eye's motion costs. In this appeal, Bull's Eye focuses its arguments exclusively on the sanction imposed by the circuit court for Jordan's spoliation of the AR-15 evidence. We follow Bull's Eye's lead and do not address whether the circuit court's sanction for spoliation of the cell phone evidence was in error.

[11] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

appropriate "when the movant's claim or defense and the main action have a question of law or fact in common").

¶15    We mention other material facts in the following discussion.

## DISCUSSION

¶16    Bull's Eye argues that the circuit court erred because it did not dismiss Tyler's claims against Bull's Eye as a sanction for Jordan's intentional spoliation of the gun evidence. Bull's Eye also argues that, based on the operation of the *Pierringer* release entered into by Tyler and Jordan, the intentional spoliation conduct of Jordan is imputed to Tyler and, as a result, Tyler's claim against Bull's Eye must be dismissed based on principles of indemnification. We address each argument in turn.

## I.  The Spoliation Sanction Was Proper.

¶17    Bull's Eye contends that the circuit court erred in its selection of the sanction for Jordan's spoliation of the AR-15 evidence. We begin our analysis by setting forth principles that govern the spoliation of evidence and our standard of review.

### A.  Governing Principles and Standard of Review.

¶18    Every potential litigant and party to an action has a duty to preserve evidence that is essential to a claim that will likely be litigated. *American Fam. Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶21, 319 Wis. 2d 397, 768 N.W.2d 729; *Sentry Ins. v. Royal Ins. Co. of Am.*, 196 Wis. 2d 907, 918, 539 N.W.2d 911 (Ct. App. 1995). If a potential litigant or party destroys, alters, or loses evidence in a manner

8

that constitutes spoliation, the circuit court may impose sanctions for the spoliation of that evidence. *See **Golke***, 319 Wis. 2d 397, ¶21.

¶19    But, "[n]ot all destruction, alteration, or loss of evidence qualifies as spoliation" or requires the imposition of a sanction. *See **Insurance Co. of N. Am. v. Cease Elec. Inc.***, 2004 WI App 15, ¶15, 269 Wis. 2d 286, 674 N.W.2d 886. In ***Milwaukee Constructors II v. Milwaukee Metropolitan Sewerage District***, 177 Wis. 2d 523, 502 N.W.2d 881 (Ct. App. 1993), this court adopted a multi-step analytical process for evaluating allegations of evidence destruction, alteration, or loss to determine whether spoliation has occurred and if a sanction should be imposed. *See **id.*** at 532 (citing and adopting the analytical framework set forth in ***Struthers Patent Corp. v. Nestle Co.***, 558 F. Supp. 747 (D.N.J. 1981)). First, the court identifies, with as much specificity as possible, the evidence that is alleged to have been destroyed, altered, or lost. ***Id.***; ***Garfoot v. Fireman's Fund Ins. Co.***, 228 Wis. 2d 707, 718, 599 N.W.2d 411 (Ct. App. 1999). After the destroyed, altered, or lost evidence has been identified, the court makes a factual inquiry into the following three factors:  (1) the relationship of the destroyed, altered, or lost evidence to the issues in the present action; (2) the extent to which the destroyed, altered, or lost evidence can now be obtained from other sources; and (3) whether the party responsible for the evidence destruction, alteration, or loss knew or should have known at the time he or she caused the destruction, alteration, or loss of evidence that litigation against the opposing parties was a distinct possibility. ***Milwaukee Constructors II***, 177 Wis. 2d at 532; ***Garfoot***, 228 Wis. 2d at 718. Finally, the court must decide whether, in light of the circumstances disclosed by the court's factual inquiry into the three previously identified factors, sanctions should be imposed upon the party responsible for the evidence destruction, alteration, or loss and, if so, what the sanction should be. ***Milwaukee Constructors***

*II*, 177 Wis. 2d at 532; *Garfoot*, 228 Wis. 2d at 718-19. Here, the parties' arguments focus on the final step of this analytical framework – the circuit court's imposition of the sanction for spoliation of the gun evidence by Jordan, and we next discuss the standards for the imposition of sanctions for spoliation of evidence.

¶20     Sanctions for spoliation serve two main purposes: "(1) to uphold the judicial system's truth-seeking function[;] and (2) to deter parties from destroying evidence." *Cease Elec. Inc.*, 269 Wis. 2d 286, ¶16. A circuit court has "a broad canvas upon which to paint in determining what sanctions are necessary" in a spoliation case. *Milwaukee Constructors II*, 177 Wis. 2d at 538. Wisconsin courts have recognized the following potential remedies for evidence spoliation: (1) discovery sanctions; (2) monetary sanctions; (3) exclusion of evidence; (4) reading the spoliation inference instruction to the jury; and (5) dismissal of one or more claims. *See Golke*, 319 Wis. 2d 397, ¶42; *Sentry Ins.*, 196 Wis. 2d at 918-19; *Estate of Neumann v. Neumann*, 2001 WI App 61, ¶80, 242 Wis. 2d 205, 626 N.W.2d 821; *White v. Rasner*, No. 2014AP822, unpublished slip op., ¶¶41, 45, 47 (WI App Apr. 2, 2015).

¶21     Pertinent to this appeal are two of these recognized sanctions: the spoliation inference instruction and dismissal. When imposing either of those sanctions, a circuit court is guided by the following principles. The spoliation inference instruction is not appropriate when evidence is negligently destroyed, but may be appropriate when the destruction of evidence is intentional. *See Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 80-81, 211 N.W.2d 810 (1973). Also, a court should only rarely impose dismissal as a sanction. *Golke*, 319 Wis. 2d 397, ¶42; *Garfoot*, 228 Wis. 2d at 719. Only when the spoliation conduct is "egregious" is dismissal an appropriate sanction. *Golke*, 319 Wis. 2d 397, ¶42. Egregious conduct involves more than negligence; it consists of "a conscious attempt to affect the

outcome of the litigation or a flagrant, knowing disregard of the judicial process." *Id.* (quoting *Milwaukee Constructors II*, 177 Wis. 2d at 533).

¶22 "A [circuit] court's decision whether to impose sanctions for the … spoliation of evidence, and what sanction to impose, is committed to the [circuit] court's discretion." *Garfoot*, 228 Wis. 2d at 717 (footnote omitted); *see Golke*, 319 Wis. 2d 397, ¶18. This court will affirm the circuit court's decision on spoliation sanctions if the circuit court "has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach." *Garfoot*, 228 Wis. 2d at 717.

### B. Additional Pertinent Facts.

¶23 We now set forth additional facts pertinent to our analysis, as found by the circuit court, concerning Jordan's spoliation of the gun evidence. These facts are not challenged on appeal. *See* WIS. STAT. § 805.17(2) (findings of fact will be affirmed unless clearly erroneous). We then set forth the circuit court's reasoning for imposing the spoliation inference instruction as the sanction for Jordan's spoliation.

### 1. Spoliation of the Gun Evidence.

¶24 The AR-15 was owned by Jordan both before and after the November 2017 shooting accident. The day before the accident, Jordan gave Tyler the gun and, according to the circuit court, Jordan knew at that time that "there were some issues with the gun without telling Tyler of [those] issues."

¶25 Immediately following the shooting accident, which Jordan was fully aware of, law enforcement took control of the gun. Approximately one week after the shooting accident, Tyler sent a text message to Jordan stating: "If you get the

gun back dont [sic] use it or clean it or anything, just put it in your cabinet, cause [sic] if we go after bullseye [sic] for it that will void everything." The circuit court "read[] this message as Tyler … putting Jordan on notice that litigation [was] a distinct possibility." After law enforcement returned the AR-15 to Jordan in late January 2018, Tyler told Jordan that he wanted to talk to a lawyer and that Jordan should not do anything with the gun. After Tyler retained an attorney, Tyler told Jordan that Tyler's attorney wanted to have the gun inspected.

¶26 Despite knowing that litigation was possible, Jordan manipulated the AR-15 to show his wife "what happened." Then, in February 2018, Jordan took the AR-15 to Bull's Eye. The Bull's Eye employee who inspected the AR-15 made material changes to the gun with Jordan's permission, including the installation of a new retention plate. Jordan was the only individual to request that Bull's Eye manipulate and modify the gun, and there is no evidence that Bull's Eye or any employee of Bull's Eye knew, or should have known, about potential litigation as of February 2018.

¶27 After Bull's Eye installed the new retention plate in the AR-15, Jordan disassembled the gun by separating the two halves of the gun. Jordan then gave the lower half of the gun to a representative of Tyler's attorney. Since approximately that time, a retention plate has been missing.

## 2. The Circuit Court's Reasoning.

¶28 In its decision to impose the spoliation inference instruction as a sanction, the circuit court gave the following reasoning concerning its findings that Jordan's spoliation of evidence was intentional and about the importance of the spoliated evidence:

12

> [Tyler's claims] center[] around the condition of the gun and it[s] components at the time of the [shooting accident], including the presence and placement of pins and the retention plate. The opportunity to appropriately evaluate the gun and its components [in] their condition at or near the time of incident is essential and necessary to allow the parties to formulate their defenses or claims….
>
> ….
>
> .… The court finds Jordan Mueller took deliberate acts in manipulating a gun that he knew would very likely be subject to litigation…. Each manipulation of the gun by Jordan resulted in evidence that grew farther away in terms of the gun's condition at the time of the incident. Such manipulation puts adverse parties at a disadvantage and left other parties with no effective means to gather evidence about the gun and its condition at the time of the incident. Changing the condition of the gun and removing components of the gun, including a retention plate that still remains missing today, which are integral to the gun[']s functioning and are the primary focus on this case, deprived the parties the opportunity to adequately defend the case. The court finds Jordan Mueller, by clear and convincing evidence intentionally and deliberately destroyed evidence that was essential to the case, evidence that was not available through any other sources and evidence that was key to this case.

¶29   Based on Jordan's intentional spoliation of the AR-15 evidence, the circuit court granted Bull's Eye's request for a spoliation sanction. More particularly, the court granted one of the possible sanctions Bull's Eye requested in its motions, namely, that the jury be given the spoliation inference instruction. The circuit court denied Bull's Eye's request for dismissal of Tyler's claims against Bull's Eye.

## C. Analysis.

¶30   We now consider the parties' arguments that address whether the spoliation sanction imposed by the circuit court for Jordan's spoliation of the AR-15 evidence constituted an erroneous exercise of discretion. As noted, Bull's Eye

argues that the circuit court erroneously exercised its discretion in not dismissing Tyler's claim against Bull's Eye as a sanction for Jordan's spoliation of the AR-15 evidence. Based on Jordan's ultimate dismissal from the lawsuit based on the *Pierringer* release, Bull's Eye argues that the only appropriate sanction is to dismiss Tyler's claim against Bull's Eye.

### 1. No Egregious Conduct.

¶31     As mentioned, dismissal as a sanction for spoliation of evidence can be imposed only when the spoliator's conduct amounted to "egregious conduct." *See Golke*, 319 Wis. 2d 397, ¶42. In its appellate reply brief, Bull's Eye asserts for the first time that "[t]he argument can be made that the lower court made … an implicit finding of egregious conduct by Jordan here."[12]

¶32     The circuit court's decision does not support Bull's Eye's assertion that the circuit court found (implicitly or otherwise) that Jordan's conduct was egregious. The circuit court correctly noted in its decision that dismissal as a sanction for spoliation requires a showing of egregious conduct, but that the less severe sanction of imposing the spoliation inference instruction may be imposed when the spoliator intentionally destroyed material evidence. The circuit court made a specific finding that Jordan acted intentionally, the court made no finding that Jordan's conduct was egregious, and the court did not identify any facts

---

[12] We could reject this argument based solely on the fact that Bull's Eye raises it for the first time in its reply brief, and Tyler and Jordan did not have the opportunity to respond. *See Richman v. Security Savs. & Loan Ass'n*, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973) (declining to address arguments raised for the first time in a reply brief). Further, Bull's Eye fails to present this court with a developed argument explaining why the circuit court's ruling on Bull's Eye's motion for sanctions should be construed as including a finding that Jordan's conduct was egregious. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating this court need not address arguments that are insufficiently developed). Nonetheless, we consider this argument from Bull's Eye as best we understand it and reject it for other reasons.

suggesting that Jordan's spoliation was egregious. *See Milwaukee Constructors II*, 177 Wis. 2d at 533 (noting a finding of egregiousness requires a "conscious attempt to affect the outcome of the litigation or a flagrant, knowing disregard of the judicial process"). The dearth of specific findings by the circuit court indicating that Jordan's conduct was egregious, along with the imposition of a sanction that the circuit court recognized as appropriate when the spoliator has acted intentionally but not egregiously, establish that the circuit court did not implicitly find that Jordan's conduct was egregious.

¶33 Bull's Eye does not dispute that, absent a finding that Jordan's conduct was egregious, dismissal of Tyler's claim against Bull's Eye as a sanction for Jordan's spoliation would constitute error. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating a proposition asserted by a respondent on appeal and not disputed by the appellant's reply can be taken as admitted). Thus, without a finding of egregious conduct by Jordan, Bull's Eye's request for dismissal of Tyler's claim as a sanction necessarily fails.

## 2. No Erroneous Exercise of Discretion.

¶34 Bull's Eye argues that the circuit court's decision to give the spoliation inference instruction based on Jordan's spoliation of the gun evidence is an erroneous exercise of discretion because that sanction: (1) fails to adequately restore Bull's Eye "to the position [Bull's Eye] would have been in but for Jordan's spoliation"; and (2) in light of the *Pierringer* release, that sanction does not penalize Jordan for his spoliation because Jordan is no longer a party to this lawsuit.

¶35 Bull's Eye does not dispute that, as noted above, this court has stated that "[t]he primary purpose[s] behind the doctrine of spoliation [are] twofold:" "to uphold the judicial system's truth-seeking function" and "to deter parties from

destroying evidence." ***Cease Elec., Inc.***, 269 Wis. 2d 286, ¶16. Rather, Bull's Eye argues that the circuit court was obligated to conclude that the spoliation sanction imposed in this case must also: (1) restore Bull's Eye to the position it would have been in but for the spoliation; and (2) punish the spoliator, Jordan. And, according to Bull's Eye, if the sanction did not have both of those effects, the imposed sanction was an erroneous exercise of the circuit court's discretion. In support of those contentions, Bull's Eye relies on the results of our opinions in ***Sentry Insurance*** and ***Cody v. Target Corp.***, No. 2011AP2831, ¶2, unpublished slip op. (WI App June 27, 2013). We reject Bull's Eye's argument for several reasons that we now discuss.

¶36 First, Bull's Eye's argument is based upon an analytical leap that is not supported by our opinions in ***Sentry Insurance*** and ***Cody***. In ***Sentry Insurance***, homeowners brought a product liability action against the manufacturer of their refrigerator alleging that the refrigerator was the cause of a fire that resulted in extensive damages. ***Sentry Ins.***, 196 Wis. 2d at 911-12. We affirmed the circuit court's exclusion of evidence relating to the condition of the refrigerator as a sanction for the failure of Sentry (the insurer of the homeowners) to properly preserve the refrigerator and Sentry's intentional removal of parts from the refrigerator, all of which prevented the defendant from conducting tests essential to its defense. ***Id.*** at 919.

¶37 In ***Cody***, plaintiffs brought suit to recover for injuries they sustained from exposure to unidentified chemicals found in a box for an inflatable mattress plaintiffs purchased from Target. ***Cody***, No. 2011AP2831, ¶2. The circuit court found that Target intentionally disposed of the box and its contents and, as a sanction for Target's spoliation, ordered that the issue of causation was established against

Target.  *Id.*, ¶¶5-6.  We affirmed the circuit court's sanction against Target.  *Id.*, ¶¶21, 23, 25.

¶38    In both *Sentry Insurance* and *Cody*, we were tasked with determining whether the particular discovery sanction imposed for the spoliation of evidence was a proper exercise of the circuit court's discretion under the facts of those particular cases.  The spoliation sanctions in each of those cases arguably had a remedial effect and in some fashion punished the spoliator.  But, nothing in those opinions or other Wisconsin case law supports Bull's Eye's contention that, whenever sanctions are imposed for spoliation of evidence, the sanction *must* always restore the party injured by the spoliation to his or her purported pre-spoliation position regarding that evidence and punish the spoliator.

¶39    Second, Bull's Eye asserts that the sanction imposed by the circuit court will not have any remedial impact in these circumstances due to the fact that Bull's Eye must still put forth a defense at trial against Tyler's claim, despite Jordan's spoliation of "key" evidence that is not available through any other source.  Although the spoliation inference instruction permits the jury to draw an inference against Jordan concerning the spoliated gun evidence, the instruction does not mandate that the jury do so.  According to Bull's Eye, it then follows that the spoliation inference instruction is an inadequate means to "even the playing field" and put Bull's Eye in the position it believes it would have been absent Jordan's spoliation of the gun evidence.  Bull's Eye argues, in effect, that the spoliation inference instruction fails as a remedy because it does not serve as a complete substitute, and a definitive remedy, for the spoliated gun evidence.

¶40    Bull's Eye's argument is undeveloped to the extent that it does not point to any authorities to support its position that a spoliation sanction must achieve

a definitive result for Bull's Eye that dismisses all claims against it. *See **Kruczek v. DWD***, 2005 WI App 12, ¶32, 278 Wis. 2d 563, 692 N.W.2d 286 (declining to consider arguments unsupported by reference to legal authority). Indeed, applicable authorities establish that a permissible inference instruction that unavailable evidence is adverse to the spoliator is a proper sanction for spoliation when, as here, the spoliation was intentional but not egregious. *See, e.g.*, ***Golke***, 319 Wis. 2d 397, ¶42; ***Jagmin***, 61 Wis. 2d at 80-81. In this situation, Bull's Eye benefits from the spoliation inference instruction in that, at trial, the jury may draw an inference against Jordan from the gun spoliation evidence. That will be to the benefit of Bull's Eye because, pursuant to the ***Pierringer*** release, Jordan's causal negligence will be assumed by Tyler. We thus reject Bull's Eye's assertions that the sanction of the spoliation inference instruction is an erroneous exercise of discretion by the circuit court because it does not have a remedial effect and does not grant to Bull's Eye a definitive remedy of dismissal of all remaining claims against it.

¶41 Third, Bull's Eye argues that, in light of the fact that Jordan is no longer a party to this lawsuit, the instruction does not have a punitive effect because it fails to punish Jordan directly for his spoliation of the gun evidence. In Bull's Eye's view, the only sanction that will sufficiently punish Jordan is the dismissal of Tyler's claim against Bull's Eye because "Jordan will suffer a very personal punishment few spoliators suffer: He will know he both opened the door for [Tyler's] injury to occur and then closed the door on [Tyler's] remedy."

¶42 Bull's Eye's argument attempts to turn upside down Wisconsin law on sanctions for spoliation of evidence. Bull's Eye contends that Tyler, as an innocent party regarding Jordan's spoliation of evidence, should, in the exercise of the circuit court's discretion, have his remaining claims in this lawsuit dismissed. A party such as Tyler cannot be sanctioned with dismissal of the parties' claims

based on the spoliation of evidence unless that party spoliates evidence in an egregious manner. *See Golke*, 319 Wis. 2d 397, ¶42; *Milwaukee Constructors II*, 177 Wis. 2d at 532-33. Here, there is no finding of the circuit court, and no evidence, that any action by Tyler either spoliated evidence or was egregious. As a result, there is no basis to dismiss Tyler's claims against Bull's Eye as a sanction for Jordan's spoliation of evidence.

¶43 In sum, we reject Bull's Eye's argument that the circuit court erroneously exercised its discretion in imposing the spoliation inference instruction as a sanction for Jordan's spoliation of the gun evidence. We conclude that the circuit court's sanction was reasonable given the court's examination of the facts and application of the proper standards of law. *See Garfoot*, 228 Wis. 2d at 717.

## II. No Dismissal Based on Indemnification.

¶44 Bull's Eye next argues that Tyler's claim against it must be dismissed because Bull's Eye is entitled to indemnification from Jordan as a result of Jordan's intentional spoliation of evidence and, by virtue of the *Pierringer* release entered into by Tyler and Jordan, Jordan's indemnity obligation to Bull's Eye is imputed to Tyler. According to Bull's Eye, that imputation requires that Tyler's claim against Bull's Eye be dismissed. We reject Bull's Eye's argument because Jordan does not have an indemnity obligation to Bull's Eye based on his intentional spoliation of evidence.

¶45 We begin our analysis by setting forth our standard of review and identifying principles governing indemnification.

### A. Standard of Review and Principles Governing Indemnification.

¶46    Bull's Eye characterizes the specific order of the circuit court at issue in this section of this opinion as an order regarding summary judgment. Tyler disagrees because no motion for summary judgment was filed by any party after the *Pierringer* release was executed. At any rate, the parties agree that, regardless of whether the order was entered on summary judgment or otherwise, the ultimate issue before this court – whether the circuit court erred by not dismissing Tyler's claim against Bull's Eye based on indemnification principles and operation of the *Pierringer* release – is an issue of law that this court reviews de novo. We agree with the parties that our review of this order of the circuit court is de novo, regardless of the procedure used in the circuit court. *See, e.g.*, *Fleming*, 131 Wis. 2d at 132 (determining as a matter of law whether dismissal of the plaintiff's claims against a non-settling defendant following execution of a *Pierringer* release is proper); *see also Paskiet v. Quality State Oil Co.*, 164 Wis. 2d 800, 805, 476 N.W.2d 871 (1991) (reviewing the dismissal of an action de novo); *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997) (reviewing summary judgment de novo).

¶47    Principles of indemnification are material to our analysis, and for context we now give an overview of germane principles.

¶48    "There are two doctrines generally applicable to the distribution of the loss among persons liable for the same harm – contribution and indemnity." *Swanigan*, 99 Wis. 2d at 196. Contribution is the distribution of the loss among defendants requiring each defendant to pay their "proportionate share of the damages on a comparative fault basis." *Id.*

¶49    Indemnification can arise either by contract or based on principles of equity. ***Estate of Kriefall v. Sizzler USA Franchise, Inc.***, 2012 WI 70, ¶34, 342 Wis. 2d 29, 816 N.W.2d 853. As we discuss shortly, Bull's Eye's argument is based on equitable indemnification. In contrast to contribution, "[i]ndemnification shifts the entire loss from one person who has been compelled to pay it to another who on the basis of equitable principles should bear the loss." ***Swanigan***, 99 Wis. 2d at 196.

¶50    We next turn to the arguments of the parties.

## B.  No Equitable Indemnification.

¶51    Bull's Eye argues that Tyler's claim against it must be dismissed for the following reasons, both of which must be established for Bull's Eye to prevail on its argument.

¶52    First, Bull's Eye contends that it is entitled to equitable indemnification from Jordan for any negligence of Bull's Eye[13] that caused injuries to Tyler, and that indemnification shifts all liability for Bull's Eye's negligent acts to Jordan. As the basis for this contention, Bull's Eye asserts that it has been "exposed to liability" by the "wrongful act" of Jordan of intentionally spoliating the gun evidence, and, as a result, equitable indemnification is owed to it from Jordan, and Bull's Eye cites to ***Kjellsen v. Stonecrest, Inc.***, 47 Wis. 2d 8, 11-12, 176 N.W.2d 321 (1970) and ***Fleming***, 131 Wis. 2d at 130. Second, Bull's Eye contends that Jordan's indemnification obligation is imputed to Tyler by operation of Tyler's ***Pierringer*** release of Jordan.

---

[13] The parties do not dispute that Tyler's only claim against Bull's Eye is based on the alleged negligence of Bull's Eye.

21

¶53     From those two propositions, Bull's Eye argues that its own liability for any injury to Tyler it caused has been shifted entirely to Tyler, and dismissal of Tyler's claim against Bull's Eye is required.  For the reasons that follow, we reject Bull's Eye's first proposition that Bull's Eye is entitled to equitable indemnification from Jordan based on Jordan's intentional spoliation of the gun evidence.  Accordingly, Bull's Eye's argument that Tyler's claim against Bull's Eye must be dismissed fails.

### 1.  Irreconcilable With Wisconsin Law on Spoliation.

¶54     The initial basis to reject Bull's Eye's argument is that it is irreconcilable with Wisconsin case law standards regarding the spoliation of evidence.  As we have already discussed, once a circuit court determines that evidence has been spoliated, the court must then decide whether to impose sanctions for the spoliation and, if so, what the sanctions should be.  *Garfoot*, 228 Wis. 2d at 718-19; *Milwaukee Constructors II*, 177 Wis. 2d at 532.

¶55     Bull's Eye's argument would necessarily require that, whenever a circuit court found that a party intentionally spoliated evidence and such spoliation has an adverse effect on an allegedly negligent non-spoliator, there could only be one form of spoliation relief that the circuit court must grant:  indemnification by the spoliator for all causal negligence of the non-spoliator adversely affected by the spoliation.  In other words, according to Bull's Eye, the court would have to order a complete shift of all causal negligence from the non-spoliator to the intentional spoliator.  Bull's Eye's argument runs afoul of Wisconsin law on spoliation of evidence for at least two reasons.

¶56     First, Bull's Eye's proposal would require dismissal as the sanction for all intentional spoliation of evidence.  Here, Bull's Eye seeks the dismissal of

Tyler's remaining negligence claim against Bull's Eye. Bull's Eye's argument would also require a dismissal in other scenarios. As an example, if we accepted Bull's Eye's argument, a plaintiff who intentionally spoliates evidence would have his or her claims against an allegedly negligent non-spoliator adversely affected by the spoliation dismissed because the entire causal liability for the non-spoliator's negligence would be shifted to the plaintiff, and that would mandate dismissal of the plaintiff's claims against a non-spoliator. Under this rule, the same would be true for third-party claims of an intentional spoliator defendant against an allegedly negligent non-spoliator third-party defendant adversely affected by the spoliation; the causal negligence of the non-spoliator third-party defendant would be shifted to the intentional spoliator and the third-party plaintiff's claim would be dismissed.

¶57 But, as discussed, only when a circuit court finds that a spoliator's conduct is egregious is dismissal allowed. *Golke*, 319 Wis. 2d 397, ¶42; *Garfoot*, 228 Wis. 2d at 719; *Milwaukee Constructors II*, 177 Wis. 2d at 533. Bull's Eye's argument is directly contrary to Wisconsin law on spoliation of evidence because it would require dismissal based not on egregious conduct, but only intentional conduct. In this case, as we have discussed above, there is no finding of egregious conduct by Jordan (or Tyler). Therefore, Bull's Eye's request for dismissal of Tyler's remaining claim against it based on indemnification fails because it cannot be reconciled with established Wisconsin law on spoliation.

¶58 Second, as we have also explained, a circuit court has a "broad canvas upon which to paint in determining what sanctions are necessary." *Milwaukee Constructors II*, 177 Wis. 2d at 538. If we accept Bull's Eye's argument, at least in some circumstances the circuit court would have no discretion to exercise when determining whether relief for intentional spoliation should be granted and, if so, the appropriate relief. Instead, in Bull's Eye's view, in these circumstances the court

would be required to shift all causal negligence from the non-spoliator party to the intentional spoliator and grant the concomitant dismissal. This would be true, according to Bull's Eye's argument, regardless of the importance (or lack of importance) of the spoliated evidence to the case or the relative weakness of the adverse effect on the non-spoliator. That result cannot be reconciled with, and is directly contrary to, the "broad canvas" on which the circuit court exercises its discretion in granting relief appropriate to a given case. The circuit court's discretion cannot be circumscribed in the manner advanced by Bull's Eye under settled spoliation law.

¶59    Bull's Eye relies on case law to support its position. As we next discuss, those cases do not support Bull's Eye's argument. We begin by considering *Fleming*, a case central to Bull's Eye's argument.

## 2. *Fleming*.

¶60    In *Fleming*, our supreme court addressed "whether a negligent tortfeasor has a right to indemnity or contribution from an intentional joint tortfeasor." *Fleming*, 131 Wis. 2d at 125. Plaintiff Fleming was injured from the blast of a sawed-off shotgun. He brought suit against Seeger, who allegedly fired the sawed-off shotgun, and Putzke, who allegedly made the shotgun available to Seeger. *Id.* Before trial, Fleming entered into a *Pierringer* release with Seeger, and Seeger was dismissed from the lawsuit. *Id.* The jury found that Seeger had intentionally shot Fleming and that Putzke was causally negligent in making the shotgun available to Seeger. *Id.* at 126. Putzke appealed the money judgment entered against him based on his negligence that caused damages to Fleming. *Id.* at 126-27.

24

¶61    The *Fleming* court held that "a negligent tortfeasor has a right to indemnity from an intentional joint tortfeasor":

> Were we to allow a negligent tortfeasor only a right to contribution from an intentional joint tortfeasor, the intentional tortfeasor effectively would receive the benefit of contribution from the negligent tortfeasor, in direct conflict with the established law in this state. While this approach allows a defendant who is causally negligent to escape from liability in some circumstances, we believe that shifting the full responsibility for the loss to the intentional tortfeasor serves the policy of deterring conduct which society considers to be substantially more egregious than negligence.

*Id.* at 130.

¶62    Bull's Eye contends that *Fleming* supports its argument that Jordan owes it equitable indemnification based on his intentional spoliation of the gun evidence. For the reasons we next discuss, we reject Bull's Eye's contention because it is based on erroneous interpretations of our supreme court's opinion in *Fleming* and indemnification principles.

### a. Jordan Is Not an Intentional Joint Tortfeasor as Required by *Fleming*.

¶63    The *Fleming* court used the term "negligent tortfeasor." *See, e.g*, *id.* at 125, 127-30. For purposes of this argument, the parties assume that Bull's Eye's alleged role in this case is as a causally negligent tortfeasor, and we make this same assumption.

¶64    *Fleming* requires that, for a negligent tortfeasor to be indemnified in these circumstances, the party from whom indemnification is sought must be an "intentional joint tortfeasor." *See id.* at 125, 127-30; *see also* **Imark Industries, Inc. v. Arthur Young & Co.**, 148 Wis. 2d 605, 619, 436 N.W.2d 311 (1989). Our supreme court did not define what the term "intentional joint tortfeasor" means in

25

this context. However, we can look to dictionary definitions of terms and previous case law to establish the ordinary and common meaning of terms. *See State v. Harvey*, 2006 WI App 26, ¶16, 289 Wis. 2d 222, 710 N.W.2d 482. The term "tortfeasor" is defined as "[o]ne who commits a tort." BLACK'S LAW DICTIONARY 1627 (9th ed. 2009). The term "[i]ntentional" is defined as "[d]one with the aim of carrying out the act." BLACK'S LAW DICTIONARY 814 (7th ed. 1999). The phrase "joint tortfeasor" means "independent tortfeasors whose concurrent acts jointly caused a single injury" and "tortfeasors who acted in concert" to cause an injury. *Brown v. Hammermill Paper Co.*, 88 Wis. 2d 224, 232, 276 N.W.2d 709 (1979) (citing PROSSER, TORTS 301 (4th ed.)). Based on those definitions, an "intentional joint tortfeasor" is one who, with the aim of carrying out the act, commits a tort that causes an injury either in concert with, or concurrently with, another tortfeasor.

¶65 For several reasons, Jordan is not an "intentional joint tortfeasor" based on his acts of spoliating the gun evidence. Jordan's intentional spoliation of the gun evidence is wholly separate from the acts of any parties that caused Tyler's injuries.

¶66 First, there is no allegation made in this action that the conduct that makes Jordan a joint tortfeasor in connection with the shooting accident was "intentional." Tyler alleged in the amended complaint that Jordan's negligent conduct was a cause of the injuries Tyler sustained in the shooting accident. Tyler did not claim, and Bull's Eye does not argue or identify any facts, that Jordan's tortious conduct that allegedly caused Tyler's injuries was committed with intent. Indeed, the third-party complaint of Bull's Eye against Jordan alleges only negligent conduct of Jordan that purportedly caused injury to Tyler.

26

¶67 Second, Bull's Eye and Jordan are not joint tortfeasors based on Jordan's intentional spoliation of evidence. To be "joint tortfeasors," parties must jointly cause a "single injury" by acting "concurrent[ly]" or "in concert." *Id.* Here, in no sense can it be said that Bull's Eye's negligence and Jordan's spoliation of evidence both caused the injury Tyler sustained in the shooting accident; Bull's Eye's negligence may have caused injury to Tyler, and Jordan's intentional spoliation caused evidentiary proof problems. Further, those acts of Bull's Eye and Jordan were not concurrent or in concert because those acts happened at different times and were not related in result or activity. No party has even alleged that Jordan's spoliation caused injury to Tyler that may be compensated by damages in this lawsuit. Under *Fleming*, principles of indemnity between joint tortfeasors do not apply to an act that does not cause compensable injuries, regardless of whether the act is negligent or intentional. *See Fleming*, 131 Wis. 2d at 125, 130.[14]

¶68 Apparently recognizing these impediments to its argument, Bull's Eye asserts "that *a negligent wrongdoer* has a right to indemnity from *an intentional wrongdoer*." (Emphasis added.) A "wrongdoer," according to Bull's Eye, is someone who commits "a wrongful act" that is "not necessarily a tort." Bull's Eye contends that it is entitled to indemnity from Jordan because the circuit court found that Jordan intentionally engaged in a wrongful act, the spoliation of the AR-15 evidence.

---

[14] Bull's Eye cites to *Boyd v. Travelers Insurance Company*, 652 N.E.2d 267 (Ill. 1995). In *Boyd*, the court stated that "consistent with a majority of jurisdictions, [Illinois] has never" "recognize[d] 'spoliation of evidence' as an independent cause of action." *Id.* at 192-93. The court held, however, that "an action for negligent spoliation can be stated under existing negligence law." *Id.* at 193. But, Bull's Eye does not explain how this conclusory statement in Illinois case law could matter to this appeal. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to consider conclusory assertions and undeveloped arguments).

¶69 Bull's Eye's assertion fails in light of the supreme court's statements in *Fleming* and *Imark*. The supreme court stated in those opinions that a "negligent tort[]feasor" has the right to indemnity from a "joint intentional tortfeasor." *Fleming* 131 Wis. 2d at 125, 127, 130; *Imark*, 148 Wis. 2d at 619. Bull's Eye incorrectly substitutes the supreme court's uses of the word "tortfeasor" for the word "wrongdoer" and omits the word "joint" from its assertion.

¶70 In support of its argument to the contrary, Bull's Eye points to a single paragraph in *Fleming*. In that paragraph, our supreme court used the terms "intentional misconduct" and "intentional wrongdoer" on one occasion each during its discussion of whether a negligent tortfeasor has a right to indemnity from an intentional joint tortfeasor:

> Since our decision in *Ellis* [*v. Chicago & Northern Railway Co.*, 167 Wis. 392, 167 N.W. 1048 (1918)], we have continued to uphold the rule that those guilty of intentional misconduct are not entitled to contribution. *See, e.g.*, *Jacobs v. General Accident Fire & Life Assurance Corp.*, 14 Wis. 2d 1, 5, 109 N.W.2d 462 (1961); *Zurn v. Whatley*, 213 Wis. 365, 372, 251 N.W. 435 (1933). This line of cases is consistent with our decision in *Schulze v. Kleeber*, 10 Wis. 2d 540, 545, 103 N.W.2d 560 (1960), wherein we held that an intentional wrongdoer should not benefit from the contributory negligence of a plaintiff.

*Fleming*, 131 Wis. 2d at 129.

¶71 As we understand it, Bull's Eye means to argue that our supreme court's use of the terms "intentional misconduct" and "intentional wrongdoer" at one point in *Fleming* indicates that those terms are interchangeable with the term "intentional joint tortfeasor," and that a negligent tortfeasor is entitled to indemnity based upon any intentional wrongful act by another defendant, including acts that do not cause compensable injury to the plaintiff. This argument is without support.

¶72 In *Jacobs*, *Zurn*, and *Schulze* (three opinions mentioned by the supreme court in the quote, above, from *Fleming*), our supreme court stated that a defendant whose intentional tortious act is alleged to have caused the plaintiff injury is not entitled to contribution from a joint tortfeasor or plaintiff whose negligent conduct contributed to the plaintiff's injury. The intentional conduct in each of those cases was the tortious conduct giving rise to the plaintiff's claim for damages for personal injuries. *See Jacobs*, 14 Wis. 2d at 2, 5; *Zurn*, 213 Wis. at 372; *Schulze*, 10 Wis. 2d at 541-42, 545. Nothing in *Jacobs*, *Zurn*, or *Schulze* suggests that the intentional wrongful conduct was not the tortious conduct underlying the plaintiffs' claims for damages in those cases.

¶73 For those reasons, *Fleming* does not support Bull's Eye's argument.

### 3. Remaining Opinions Relied on by Bull's Eye.

¶74 Bull's Eye relies on three other opinions. However, as the following summaries demonstrate, none of the opinions support Bull's Eye's argument that it is entitled to indemnification from Jordan based on Jordan's intentional spoliation of the gun evidence that is wholly separate from any acts that caused personal injury to Tyler. This is because each concerns equitable indemnification between parties who had, or it was alleged that each had, caused the same compensable injury to the plaintiff in that action by their conduct.

¶75 In *Kriefall*, the defendants were sued by plaintiffs because of the sale of contaminated meat. *Kriefall*, 342 Wis. 2d 29, ¶¶3-6. Prior to trial, defendant Sizzler paid $1.5 million to the plaintiffs toward settlement of plaintiffs' claims. *See id.*, ¶¶2, 39. The trial concerned only the apportionment of liability between the co-defendants. *Id.*, ¶9. The jury determined that Sizzler was not liable for the plaintiffs' injuries, but that defendant Excel was eighty percent liable for those

injuries. *Id.*, ¶¶9, 39. Sizzler requested equitable indemnification from Excel because Excel had not paid toward the settlement with the plaintiffs. *See id.*, ¶¶9, 39. Our supreme court held that the circumstance which gave rise to Sizzler's claim of equitable indemnification from Excel was Sizzler's payment toward the settlement. *Id.*, ¶43. The court concluded that Sizzler "did not join" in that liability because the jury found that it was not liable. *Id.* (citing *Kjellsen v. Stonecrest, Inc.*, 47 Wis. 2d 8, 11-12, 176 N.W.2d 321 (1970)). Our supreme court determined that equitable indemnification was appropriate in this circumstance for the following reasons:

> Moreover, the jury's allocation of fault demonstrates that the considerations necessary to invoke equitable indemnification are present. As between Excel and Sizzler, who was found not liable, Sizzler's payment, if unreimbursed would benefit the tortfeasor, Excel. Sizzler made a payment in contemplation of potential liability for injuries, for which Sizzler was later determined to have no responsibility.

*Id.*, ¶45 (internal citation omitted).

¶76 In *Kjellsen*, the plaintiffs sued Stonecrest, the builder of plaintiffs' home, for allegedly concealing cracks in the foundation of the home. *Kjellsen*, 47 Wis. 2d at 9. Stonecrest brought a third-party complaint for indemnity against the real estate agent who was involved with the transaction, alleging that the agent should have told the plaintiffs about the cracks in the foundation. *Id.* The supreme court agreed with the circuit court that there was no right to indemnification to Stonecrest from the real estate agent. *Id.* at 10.

¶77 In *Teacher Retirement System of Texas v. Badger XVI Limited Partnership*, 205 Wis. 2d 532, 556 N.W.2d 415 (Ct. App. 1996), the dispute was between the owner of an office complex and the general contractor and

subcontractors, as well as the project architect, concerning purported improper construction and design of the complex. *Id.* at 537. Indemnification between the defendants was one of the issues in that opinion. *Id.* at 546. Each of the claims for indemnification concerned which defendant was liable to the plaintiff, or each other, based on damages incurred by the plaintiff caused by defendants. *Id.* at 546-49.

¶78    In sum, Bull's Eye fails to establish that Jordan, a tortfeasor whose alleged negligent tortious conduct contributed to Tyler's injuries and who also engaged in intentional spoliation of evidence, must indemnify an allegedly negligent joint tortfeasor, Bull's Eye. Without an indemnity obligation on Jordan's part, there can be no indemnity obligation imputed to Tyler by operation of the *Pierringer* release of Jordan. As a result, there is no basis to conclude that dismissal of Tyler's claims against Bull's Eye is required. Accordingly, we need not address whether Tyler's *Pierringer* release of Jordan imputes to Tyler liability for intentional wrongdoing by Jordan. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that if a decision on one point disposes of the appeal, the court will not decide other issues raised).

### III.  Dismissal of Jordan and an Inadequate Remedy.

¶79    Bull's Eye argues that, if Tyler's claims against it are not dismissed, then Jordan must remain as a party to this lawsuit. For all practical purposes, Bull's Eye's contention is that a circuit court finding that a party intentionally spoliated evidence automatically voids a *Pierringer* release entered into by that party such that the spoliating party must remain in the lawsuit. This argument fails for at least two reasons. First, Jordan asserts, and Bull's Eye does not dispute in its reply brief, that Bull's Eye did not at any time object in the circuit court to the dismissal of Jordan from this case. *See Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d

333 (Ct. App. 1983) (declining to address issues not raised before the circuit court). Our review of the record supports Jordan's assertion that Bull's Eye never objected to Jordan's dismissal from this action based on operation of the *Pierringer* release. Second, Bull's Eye's argument cannot be reconciled with controlling authorities. Our supreme court stated in *Pierringer* that so long as the causal, comparative, and contributory negligence of all the pertinent parties can be determined by the jury in a subsequent trial, there is no requirement that a settling defendant remain a party to the lawsuit. *See Pierringer*, 21 Wis. 2d at 192-93; *see also VanCleve v. City of Marinette*, 2003 WI 2, ¶40, 258 Wis. 2d 80, 655 N.W.2d 113. Similarly, in *Johnson v. Heintz*, 73 Wis. 2d 286, 243 N.W.2d 815 (1976), our supreme court stated that "no objection could be raised to the fact that [a] plaintiff and a joint tortfeasor defendant were exercising the option approved by *Pierringer*. The settlement of the claim against a defendant under those circumstances requires that he [or she] be dismissed from the action." *Id.* at 297 (bold and italics added).

¶80     Finally, Bull's Eye argues that its requests for relief advanced in this appeal must be granted based on equitable principles because otherwise "the law does not provide [Bull's Eye] with a full and adequate legal remedy." We could deny this argument based solely on the fact that it was first made in Bull's Eye's appellate reply brief, and Tyler and Jordan have not had an opportunity to rebut this argument. *See Richman v. Security Savs. & Loan Ass'n*, 57 Wis. 2d 358, 361, 204 N.W.2d 511, 513 (1973) (declining to address issues or arguments raised for the first time in a reply brief). In any case, that Bull's Eye does not receive the result it wants in this appeal does not lead to the conclusion that Bull's Eye must receive that relief through principles of equity. Granting Bull's Eye's unsupported request for relief would, in effect, void decades of case law and standards regarding

32

spoliation of evidence and *Pierringer* releases. Bull's Eye gives us no reason to upend Wisconsin law in such a fashion.

## CONCLUSION

¶81    For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.